IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORTNEY L. BARNES

V.

THOMAS CARROLL, WARDEN
JOSEPH BALLINGER, CAPTAIN
TODD KRAMER, MULTI DISCIPLINARY
TEAM (M.D.T.)

JOHN/JANE DOE, M.D.T.,
JOHN/JANE DOE, M.D.T.,
EVELYN STEVENSON, INSTITUTION
BASE CLASSIFICATION COMMITTEE,
(I.B.C.C.)
JOHN/JANE DOE, I.B.C.C.,
JOHN/JANE DOE, I.B.C.C.,

DEFENDANTS

06 - 30 9





FILED
MAY - 9 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
DD scanned
no IFP

CIVIL COMPLAINT

JURISDICTION

THIS COURT HAS JURISDICTION UNDER 42 U.S.C.A.
§ 1983 AND 5 U.S.C.A. § 552a.

PARTIES

1. PLAINTIFF, CORTNEY L. BARNES, IS AN INMATE
AT THE DELAWARE CORRECTIONAL CENTER (D.C.C.).
2. DEFENDANT, THOMAS CARROLL, IS THE WARDEN
AT THE DELAWARE CORRECTIONAL CENTER, AND IS
RESPONSIBLE FOR THE PROMULGATION OF RULES,
POLICIES, REGULATIONS, AND PRACTICES AT THE
DELAWARE CORRECTIONAL CENTER. HE IS SUED IN

HIS INDIVIDUAL CAPACITIES.

3. DEFENDANT, JOSEPH BALLINGER, IS A CAPTAIN (SHIFT SUPERVISOR) CORRECTIONAL OFFICER AT THE DELAWARE CORRECTIONAL CENTER. HE IS SUED IN HIS INDIVIDUAL CAPACITIS.

4. TODD KRAMER, DEFENDANT, IS PLAINTIFFS COUNSELOR AND A MEMBER OF THE M.D.T. BOARD. HE IS SUED IN HIS INDIVIDUAL CAPACITIES.

5. JOHN/JANE DOE, DEFENDANT, IS A MEMBER OF THE M.D.T. BOARD. HE/SHE IS SUED IN HIS/HER INDIVIDUAL CAPACITIES.

6. JOHN/JANE DOE, DEFENDANT, IS A MEMBER OF THE M.D.T. BOARD. HE/SHE IS SUED IN HIS/HER INDIVIDUAL CAPACITIES.

7. EVELYN STEVENSON, DEFENDANT, IS THE CHAIRPERSON OF THE I.B.C.C. SHE IS SUED IN HER INDIVIDUAL CAPACITIES.

8. JOHN/JANE DOE, DEFENDANT, IS A MEMBER OF THE I.B.C.C. HE/SHE IS SUED IN HIS/HER INDIVIDUAL CAPACITIES.

9. JOHN/JANE DOE, DEFENDANT, IS A MEMBER OF THE I.B.C.C. HE/SHE IS SUED IN HIS/HER INDIVIDUAL CAPACITIES.

## STATEMENT OF FACTS

ON MAY 31, 2004, PLAINTIFF BARNES WITNESSED CORRECTIONAL OFFICER (C/O) CARLTON ADAMS CONFRONT INMATE (I/M) VINCENT QUATTLEBAUM ABOUT HAVING HIS T-SHIRT UNTUCKED. AFTER NOT BEING SATISFIED WITH THE PROMPTNESS OF I/M QUATTLEBAUM FOLLOWING HIS DIRECTIVE, C/O ADAMS APPROACHED I/M QUATTLEBAUM FROM BEHIND AND PHYSICALLY ATTEMPTED TO RESTRAIN I/M QUATTLEBAUM. HE THEN ASKED I/M QUATTLEBAUM WHY HE DID NOT FOLLOW HIS ORDERS. AS I/M QUATTLEBAUM TRIED TO EXPLAIN THAT HE MERELY TRIED TO TUCK HIS SHIRT IN FROM THE FRONT AND THAT HE WAS

FOLLOWING ORDERS, C/O ADAMS CONTINUED TO PHYSICALLY RESTRAIN I/M QUATTLEBAUM BY GRABBING THE LEFT SIDE OF I/M QUATTLEBAUM'S SHIRT. AT THE TIME APPROXIMATELY FIFTEEN (15) INMATES CONFRONTED C/O ADAMS ON WHY HE WAS NOT FOLLOWING PROCEDURE AND ASKING THE INMATE FOR HIS IDENTIFICATION CARD FIRST. THIS PROMPTED C/O ADAMS TO "RADIO" FOR BACK-UP. WHEN THEN LATTER ARRIVED THERE WERE APPROXIMATELY 15 INMATES AND 10/15 C/O's LOCKED IN THE GATED AREA BETWEEN THE HOUSING BUILDING AND THE MAIN BUILDING. I/M QUATTLEBAUM WAS THEN HELD DOWN AND CUFFED WHILE THE OTHER INMATE WITNESSES TRIED TO EXPLAIN THE SITUATION TO THE ARRIVING C/O's. INMATES WERE THEN DIRECTED TO THE DINING FACILITY FOR LUNCH WITHOUT FURTHER INCIDENT. ACCORDING TO DELAWARE CORRECTIONAL CENTERS CODE OF CONDUCT AND PROPER PROCEDURE C/O ADAMS DID NOT FOLLOW PROCEDURE:

    a. C/O ADAMS DID NOT ASK I/M QUATTLEBAUM FOR HIS IDENTIFICATION CARD AFTER GIVING THE DIRECTIVE TO TUCK IN HIS SHIRT.

    b. C/O ADAMS PHYSICALLY TRIED TO RESTRAIN I/M QUATTLEBAUM BEFORE ASKING FOR HIS. IDENTIFICATION CARD. THIS IS A BREECH IN THE ORDER OF DISCIPLINARY CONDUCT.

    c. ASSUMING C/O ADAMS ATTEMPTED TO TAKE I/M QUATTLEBAUM'S D.C.C. I.D. CARD, WHICH IS LOCATED ON I/M's SHIRT, HE DID NOT FOLLOW PROTOCOL. PROPER PROCEDURE FOR OBTAINING AN INMATES I.D. CARD IS TO ASK FOR AN INMATES I.D. CARD IN A RESPECTFUL TONE. IF THEN THE INMATE REFUSES THEN THE C/O IS TO CALL FOR ASSISTANCE. EVEN THEN AFTER THE ASSISTANCE

HAS ARRIVED THE INMATE IS ASKED AGAIN TO RELIEVE HIS I.D. CARD. IF HE THEN REFUSES, THE C/O's HAVE AUTHORITY TO PHYSICALLY RESTRAIN HIM AND PLACE CUFFS ON FOR BOTH THE INMATE AND THE CORRECTIONAL OFFICERS SAFETY.

10. CONSIDERING THE ABOVE INFORMATION, IT IS CLEAR THAT C/O ADAM'S NEGLECTED TO PERFORM THE STANDARD PROCEDURE PRACTICED BY ALL C/O's THAT WORK AT D.C.C. THE INMATES WHO WITNESSED C/O ADAMS' VIOLATION OF THESE RULES TRIED TO BRING IT TO THE ATTENTION OF THE C/O's WHO ARRIVED ON THE SCENE OF THE INCIDENT. AFTER BEING IGNORED WE ASKED TO SEE A LIEUTENANT, HOWEVER, SEARGENT SULLIVAN ARRIVED FIRST AND EARGED US TO PROCEED TO THE DINING FACILITY FOR LUNCH, PROMISING TO LOOK INTO OUR ALLEGATIONS. ALL INMATES THEN PROCEEDED TO THE DINING FACILITY TO HAVE LUNCH.

11. AFTER HAVING LUNCH AND BEING LOCKED IN DINING FACILITY FOR APPROXIMATELY 25 MINUTES ALL INMATES HOUSED IN BUILDING 23 UNIT A WERE ESCORTED BY SEVERAL C/O's IN GROUPS OF TWO BACK TO THEIR HOUSING UNIT. THIRTEEN INMATES WERE POINTED OUT BY C/O ADAMS AND ORDERED TO BE HANDCUFFED AND PUT IN SEPERATE ROOMS THROUGHOUT THE WHOLE OF BUILDING 23 BY DEFENDANT BALLINGER. WHO WAS THE SHIPT SUPERVISOR ON THE DAY OF THE INCIDENT.

12. SHORTLY AFTER, THE THIRTEEN INMATES WERE TAKEN TO THE VISITING ROOMS LOCATED IN THE SECURITY HOUSING UNIT (S.H.U.) AND PLACED IN SEPERATE VISITING CUBICLES. AFTER BEING THERE FOR APPROXIMATELY 3 HOURS, SEVEN INMATES WERE TAKEN BACK TO BUILDING 23. THE REMAINING SIX (PLAINTIFF, VINCENT QUATTLEBAUM, JAMAH GROSVENOR, RUBEN PORTER, MARCUS BROCK, AND DAMONE FLOWERS) WERE TRANSFERRED TO ISOLATION CONFINEMENT / PRE-HEARING DETENTION LOCATED IN BUILDING 18 OF THE

S.H.U. IN RETALIATION FOR PLAINTIFF AND OTHER INMATES QUESTIONING C/O ADAMS' FAILURE TO FOLLOW D.C.C. RULES AND REGULATIONS AND PROPER PROCEDURE. PLAINTIFF IS ALLOW TO EXERCISE THIS RIGHT UNDER "INMATE HOUSING RULES FOR BUILDING 22,23 AT DELAWARE CORRECTIONAL CENTER," WHICH STATES, "INMATES MAY EXPRESS THEIR VIEWS IN A NON-DISRUPTIVE MANNER." FURTHERMORE, UNDER THE FIRST AMENDMENT OF THE U.S. CONSTITUTION, U.S. CITIZENS HAVE THE RIGHT TO PRACTICE "FREEDOM OF SPEECH." PLAINTIFF, EVEN THOUGH INCARCERATED, IS STILL A U.S. CITIZEN.

13. ON MAY 31, 2004, DEFENDANTS BALLINGER AND CARROLL ORDERED PLAINTIFF'S TRANSFERAL TO ISOLATION CONFINEMENT/PRE-HEARING DETENTION WITHOUT A NOTICE OF ANY CHARGES BEING BROUGHT AGAINST THE PLAINTIFF. DELAWARE CORRECTIONAL CENTER'S CODE OF PENAL DISCIPLINE REQUIRES THAT INMATES WHO ARE GIVEN TO TRANSFER TO ISOLATION CONFINEMENT MUST BE GIVEN NOTICE OF TRANSFER. AGAIN THE PROPER PROCEDURE WAS NEGLECTED AS OFFICER AND DEFENDANT'S BALLINGER AND CARROLL FAILED TO GIVE NOTICE OF TRANSFERRAL.

14. PLAINTIFF REMAINED IN ISOLATION FOR ELEVEN DAYS WHICH IS TWO-THIRDS OF THE 15 DAY MAXIMUM. THROUGHOUT THOSE ELEVEN DAYS PLAINTIFF WAS NEVER NOTIFIED OF ANY CHARGES BEING BROUGHT AGAINST HIM, WAS NEVER GIVEN A CHANCE TO MAKE A STATEMENT, OR HAVE A DISCIPLINARY HEARING OF ANY KIND. UNTIL HEARING, PLAINTIFF IS ENTITLED TO REMAIN IN HIS EXISTING HOUSING STATUS (BUILDING 23) UNLESS HE BECOMES A SUFFICIENT THREAT

TO OTHER INMATES, STAFF MEMBERS, OR HIMSELF TO
WARRANT PRE-HEARING DETENTION. THIS IN TURN
MEANS THAT PLAINTIFF HAD A RIGHT TO DUE
PROCESS IN DETERMINATION THAT HE ENGAGED
IN SUCH CONDUCT, PLAINTIFF WAS DEPRIVED
OF THAT RIGHT.

15. WHATEVER CHARGES, REASON, OR DISCIPLINARY
REPORT WHICH CAUSED PLAINTIFF'S TRANSFER
TO ISOLATION WAS REVIEWED BY DEFENDANT
CARROLL EVERYDAY PLAINTIFF REMAINED IN
ISOLATION, WHICH DESPITE HIS AND DEFENDANT
BALLINGER'S OBVIOUS ERROR BY PLACING
PLAINTIFF IN ISOLATION, DEFENDANT CARROLL
ORDERED THAT PLAINTIFF REMAIN THERE FOR
11 DAYS. FURTHERMORE, EVEN IF PLAINTIFF IS
TO RECEIVE DISCIPLINARY ACTION, DEFENDANT
CARROLL IS SUPPOSED TO HAVE PLAINTIFF
TRANSFERRED BACK TO HIS EXISTING HOUSING
STATUS (BUILDING 23) AFTER HE DIDN'T RECEIVE
A PRELIMINARY HEARING WITHIN 72 HOURS. SINCE
PLAINTIFF WAS NEVER SERVED A WRITE-UP HIS
TIME IN ISOLATION WAS ILLEGITIMATE.

16. AS A RESULT OF PLAINTIFF'S ARBITRARY
AND CAPRICIOUS PLACEMENT IN ISOLATION BY
DEFENDANTS BALLINGER AND CARROLL HE LOST A
SPOT IN A STRESS MANAGEMENT GROUP IN WHICH
HE WAS SLATED TO GRADUATE 3 WEEKS AFTER HE
WAS TRANSFERRED. PLAINTIFF HAD, APPROXIMATELY
2 MONTHS BEFORE BEING TRANSFERRED TO ISOLATION,
COMPLETED THE THINKING FOR A CHANGE GROUP
AND WAS GIVEN A CLASSIFICATION TO THE
GREEN TREE PROGRAM FOR GOOD BEHAVIOR. THESE
OPPORTUNITIES WOULD HAVE RESULTED IN GOOD TIME

CREDITS TOWARD PLAINTIFF'S SENTENCE AND WOULD
HAVE TAKEN POINTS FROM HIS RECORD FOR HIS
NEXT INSTITUTIONAL CLASSIFICATION. SINCE
PLAINTIFF WAS NEVER GIVEN ANY DISCIPLINARY
HEARING, AS WELL AS NEVER BEING WROTE-UP
PLAINTIFF WAS DEPRIVED OF CORRECT
REHABILITATION AND GOOD TIME CREDITS DUE
TO DEFENDANTS BALLINGER AND CARROLL'S
VIOLATION OF D.C.C's CORRECTIONS CODE OF
PENAL DISCIPLINE.

17. ON JUNE 10, 2004, D.C.C.'s
CLASSIFICATION COMMITTEE TRANSFERRED
PLAINTIFF TO THE SECURITY HOUSING UNIT
(S.H.U.), AND ON JUNE 22, 2004, D.C.C.'s
CLASSIFICATION COMMITTEE CLASSIFIED
PLAINTIFF TO S.H.U. BASED ON FALSIFIED OR
INVALID DISCIPLINARY REPORT AND TRANSFER
ORDERS. D.C.C.'s CLASSIFICATION COMMITTEE
CONSIST OF THE M.D.T. AND I.B.C.C. BOARDS.
THE M.D.T. IS MADE UP OF DEFENDANTS TODD
KRAMER, JOHN/JANE DOE, AND JOHN/JANE DOE. THE
I.B.C.C. IS MADE UP OF EVELYN STEVENSON,
JOHN/JANE DOE, AND JOHN/JANE DOE. THIS TRANSFER
AND CLASSIFICATION WAS IN VIOLATION OF
PLAINTIFF'S DUE PROCESS AND FIRST AMENDMENT
RIGHTS.

18. RETALIATORY FABRICATION OF PRISON
RECORDS IS A PRIVACY ACT VIOLATION, AND
RETALIATORY RECLASSIFICATION AND TRANSFER IS
DEPRIVATION OF PLAINTIFF'S FIRST AMENDMENT
RIGHTS, AND ADVERSE DISCRIMINATION UNDER THE
PRIVACY ACT.

19. NOT WITHSTANDING THE FACT THAT D.C.C.'s CLASSIFICATION COMMITTEE RELIED ON FABRICATED OR FALSIFIED PRISON RECORDS TO TRANSFER PLAINTIFF TO S.H.U., AND LATER CLASSIFY PLAINTIFF TO S.H.U., THE CLASSIFICATION COMMITTEE'S RECORDS ARE ALSO INACCURATE. WHEN PLAINTIFF WAS CLASSIFIED ON JUNE 22, 2004, THE CLASSIFICATION COMMITTEE'S RECORD AND REASON FOR DOING SO WAS BECAUSE PLAINTIFF WAS FACING "PENDING DISCIPLINARY HEARING." PLAINTIFF SENT SEVERAL LETTERS TO DEFENDANT TODD KRAMER (WHO IS ALSO PLAINTIFFS COUNSELOR). DEFENDANT KRAMER NEVER GAVE PLAINTIFF A DEFINITIVE ANSWER AS TO WHY HE WAS BEING HELD IN THE S.H.U. DEFENDANT KRAMER DIRECTED PLAINTIFF TO M.D.T., WHO WOULD BE ABLE TO ANSWER ANY QUESTIONS THAT THE PLAINTIFF WAS THAT HE WAS FACING "PENDING DISCIPLINARY HEARING." PLAINTIFF ALSO TRIED TO CONTACT SEVERAL OTHER OFFICIALS BUT WAS EITHER GIVEN THE "RUN-A-ROUND" OR THE SAME RESULTS AS BEFORE. IN AUGUST 2004 PLAINTIFF WAS RECLASSIFIED TO THE S.H.U. ONCE AGAIN WITH 16 POINTS. IN ORDER TO BE CLASSIFIED TO THE S.H.U. PLAINTIFF WOULD HAVE TO HAVE HAD AT LEAST 18 POINTS. AGAIN, THIS TRANSFER AND CLASSIFICATION WAS IN VIOLATION OF PLAINTIFF'S DUE PROCESS AND FIRST AMENDMENT RIGHTS.

20. IN RETROSPECT, BEING'S THAT PLAINTIFF WAS NEVER WRITTEN UP OR EVEN RECEIVED A DISCIPLINARY HEARING, THERE IS NO POSSIBLE WAY PLAINTIFF COULD HAVE MADE A SIX POINT JUMP FROM 11 TO 17 POINTS AND STILL BE CLASSIFIED TO THE S.H.U. PLAINTIFF WAS

CLASSIFIED AGAIN IN DECEMBER 2004 TO S.H.U. STATUS. THE CLASSIFICATION COMMITTEE FAILED TO GIVE A REASON FOR THEIR DECISION. THIS AND ABOVE INFORMATION SHOWS THAT CLASSIFICATION COMMITTEE HAS FORGED OR FALSIFIED RECORDS.

21. PLAINTIFF HAS NOTIFIED THE PROPER PARTIES ABOUT THE CLAIMS OF THE SEVERAL VIOLATIONS EXPLAINED IN ABOVE PARAGRAPHS THROUGH GRIEVANCES AND LETTERS IN HIS ATTEMPT TO RESOLVED THE PROBLEMS. HOWEVER, THE ILLEGAL CONDUCT WAS REPORTEDLY IGNORED BY D.C.C.'S ADMINISTRATIVE BODY. THEY ACT AS IF THEY "SEE NO EVIL, HEAR NO EVIL," AND IN DOING SO SEEM TO BE HELPING OUT THEIR FELLOW COLLEAGUES, WHICH CONSEQUENTLY AMOUNTS TO CONDONING IN, OR APPROVING OF THE ILLEGAL CONDUCT EXPLAINED WITHIN PARAGRAPHS 1-21. AS A RESULT PLAINTIFFS RIGHTS ARE CONTINUALLY BEING VIOLATED BECAUSE D.C.C.'S ADMINISTRATIVE BODY HAVE REFUSED TO INVESTIGATE THE CLAIMS STATED HEREIN.

"ALL DEFENDANTS WERE ACTING UNDER THE COLOR OF STATE LAW, DURING ALL TIMES RELEVANT TO THIS COMPLAINT."

## CLAIMS

### FIRST CAUSE OF ACTION

26. THE ACTIONS OR INACTIONS OF THE DEFENDANTS STATED IN PARAGRAPHS 9-21, VIOLATED PLAINTIFFS FIRST AMENDMENT RIGHTS WHEN,

    a. DEFENDANTS RETALIATED AGAINST THE PLAINTIFF, AS SET FORTH IN DETAIL IN THE PREVIOUS PAGES.

27. THE ACTIONS OR INACTIONS OF THE DEFENDANTS STATED IN PARAGRAPHS 9-21, VIOLATED PLAINTIFFS FOURTEENTH AMENDMENT RIGHTS WHEN,

    a. DEFENDANTS VIOLATED PLAINTIFF'S PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS, AS SET FORTH IN DETAIL IN THE PREVIOUS PAGES,

    b. DEFENDANTS DEPRIVED PLAINTIFF OF HIS LIBERTY AND ABILITY TO FINISH GROUPS AND EARN GOOD TIME CREDITS,

    c. DEFENDANTS DEPRIVED PLAINTIFF OF HIS LIBERTY AND ABILITY TO MOVE UP IN CLASSIFICATION TO A LARGER PROGRAM TO EARN GOOD TIME CREDITS.

28. THE ACTIONS OR INACTIONS OF THE DEFENDANTS STATED IN PARAGRAPHS 9-21, VIOLATED THE PRIVACY ACT, 5 U.S.C. A § 552 a(g)(I)(c)+ (D) WHEN,

    a. DEFENDANTS TRANSFERRED AND CLASSIFIED PLAINTIFF TO ISOLATION CONFINEMENT/PRE-HEARING DETENTION AND TO THE S.H.U., BASED ON FALSE OR FABRICATED PRISON RECORDS, AS SET FORTH IN THE PREVIOUS PAGES.

## RELIEF

A. GRANT COMPENSATORY DAMAGES IN THE AMOUNT OF $8,000 AGAINST DEFENDANTS CARROLL, BALLINGER, KRAMER, DOE, DOE, STEVENSON, DOE, AND DOE;

B. GRANT PUNITIVE DAMAGES IN THE AMOUNT OF $8,000 AGAINST DEFENDANTS CARROLL, BALLINGER, KRAMER, DOE, DOE, STEVENSON, DOE, AND DOE;

C. GRANT $150 A DAY AGAINST D.C.C. FOR KEEPING PLAINTIFF IN SEGREGATED HOUSING (ISOLATION/PRE-HEARING DETENTION/S.H.U.) BEGINNING ON MAY 31, 2004 AND ENDING ON OR ABOUT THE DATE OF JUNE 8, 2005, AND TO ALL OTHER TIMES AND DATES RELEVANT TO THIS COMPLAINT;

D. GRANT PLAINTIFF ANY OTHER RELIEF THAT HE IS ENTITLED TO.

RESPECTFULLY SUBMITTED,

CORTNEY L. BARNES
SBI #: 483609
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DE 19977



CORTNEY L. BARNES
SBI# 483609   UNIT 22/D-L2
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

CLERK OF THE SUPREME COURT
P.O. Box 476
DOVER, DE
19903

19903+0476 34