IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORTNEY L. BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-309-GMS |
| | ) |
| WARDEN THOMAS CARROLL, | ) |
| CAPTAIN JOSEPH BALLINGER, | ) |
| COUNSELOR TODD KRAMER, JOHN/ | ) |
| JANE DOE (Member of MDT | ) |
| Board), JOHN/JANE DOE, | ) |
| (Member of MDT Board), | ) |
| CHAIRPERSON OF IBCC EVELYN | ) |
| STEVENSON, JOHN/JANE DOE, | ) |
| (Member of IBCC), and JOHN/ | ) |
| JANE DOE (Member of IBCC), | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Cortney L. Barnes ("Barnes"), a prisoner incarcerated at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 9.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

**I.      THE COMPLAINT**

Suit is brought against defendants Warden Thomas Carroll ("Warden Carroll"), Captain Joseph Ballinger ("Cpt. Ballinger"), Counselor Todd Kramer ("Kramer"), Multi-Disciplinary Team ("MDT") member Jane/John Doe 1 (" Doe 1"), MDT member Jane/John Doe 2 ("Doe 2"), Institution Base Classification Committee ("IBCC") member Evelyn Stevenson ("Stevenson"),

IBCC member Jane/John Doe 3 ("Doe 3"), and IBCC member Jane/John Doe 3 ("Doe 4")[1].

On May 31, 2004, Barnes and several other inmates witnessed a confrontation between C/O Carlton Adams ("C/O Adams") and inmate Vincent Quattlebaum. Barnes alleges that he and the other inmate witnesses tried to explain to the correction officers who came to the scene that C/O Adams failed to follow proper procedures. Grosvenor alleges that when the officers ignored them, they asked to see a lieutenant corrections officer, but Sgt. C/O Sullivan arrived and urged the inmates to go to the chow-hall for lunch. After lunch, all inmates housed in Building 23, Unit A were escorted by several correctional officers to a room and thirteen inmates were identified by C/O Adams. One of those inmates was Barnes. Seven of the thirteen inmates were returned to Building 23, but Barnes was transferred to isolation confinement/pre-hearing detention. Barnes alleges that he was taken to isolation in retaliation for speaking out against C/O Adams' failure to follow DCC rules, regulations, and property procedures. He further alleges that under DCC inmate rules and the First Amendment he has the right to free speech.

Barnes alleges that Cpt. Ballinger and Warden Carroll ordered his transfer to isolation confinement/pre-hearing detention without notice of any charges. He alleges that DCC rules require inmates be given notice of a transfer to isolation. Barnes remained in isolation for 11 days, and he alleges that during this time he was not notified of any charges being brought against him, he was not provided with an opportunity to make a statement, nor did he have a preliminary hearing within 72 hours or a disciplinary hearing. Barnes alleges that until a hearing was held, he was entitled to remain in his housing classification unless he engaged in certain

---

[1] An almost identical lawsuit was filed in this court on January 21, 2005, by inmate Jamah K. Grosvenor, *Grosvenor v. Carroll,* Civ. No. 05-033-GMS.

prohibited conduct. Barnes alleges that he had a right to a due process determination that he engaged in the prohibited conduct, and he was deprived of that right. Barnes also alleges that Warden Carroll reviewed his stay in isolation, and that the warden failed to have him transferred to his existing housing when he did not receive the hearing within the allotted time period.

Barnes alleges that as a result of his stay in isolation he lost his spot in a stress management group from which he was to graduate in three weeks, and he lost his opportunity to participate in the Greentree Program. Further, he alleges that those opportunities would have resulted in his obtaining good time credits for an earlier release, and would have reduced the points on his institutional classification record.

Barnes alleges that on June 10, 2004, the Classification Committee ("Committee")[2] transferred him to the Security Housing Unit ("SHU"). Barnes alleges that on June 22, 2004, the IBCC classified him to SHU based upon a falsified or invalid disciplinary report and disciplinary orders. Barnes alleges that the Committee's records are inaccurate, and that he sent several letters concerning the inaccurate record to Kramer. Kramer, in addition to being an MDT member, is also Barnes' counselor. Barnes alleges that Kramer did not give him a definitive answer, but instead directed him to the MDT. Barnes alleges he tried to contact several other officials, but was given the "run around."

Barnes was reclassified in August 2004, again to SHU. He alleges that he has only 16 of the 18 necessary points for classification to the SHU. Barnes alleges the transfer and classification violated his due process and First Amendment Rights. Barnes was classified once

---

[2] The Committee is composed of the MDT and the IBCC. Todd Kramer, Doe 1, and Doe 2 are members of the MDT, while the IBCC members are Stevenson, Doe 3, and Doe 4.

again in December 2004, again remaining at SHU. He alleges that the Committee did not give him a reason for its decision that he remain in SHU, and the information upon which the decision is based is forged or falsified.

Barnes alleges that his placement in SHU violated his right to due process and his First Amendment rights. He also alleges that there was a retaliatory fabrication of his prison records in violation of the Privacy Act and a retaliatory reclassification and transfer in violation of his First Amendment rights.

## II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis,* 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996)(citing *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir. 1993)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner,* 404

U.S. 519, 520-521 (1972)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### III. ANALYSIS

#### A. Retaliation/Free Speech

Liberally construing the complaint, Barnes alleges that Cpt. Ballinger, Warden Carroll, and the members of the Multi-Disciplinary Team and the Institutional Base Classification Committee retaliated against him by sending him to isolation, and ultimately SHU, for speaking out against what he believed were C/O Adams' use of improper procedures. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton,* 523 U.S. 574, 592 (1998); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that Barnes demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Anderson v. Davila,* 125 F.3d 148, 160-61 (3d Cir. 1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U . S. 274 (1977); *see also Allah v. Seiverling*, 229 F.3d 220, (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

Applying the retaliation standard and construing the complaint liberally, Barnes has stated a claim of retaliation for his exercise of a First Amendment right. Indeed, in light of his assertions, it may be inferred that he was the object of retaliation because of speaking out against

what he perceived to be the use of improper procedures by C/O Adams. Therefore, Barnes will be allowed to proceed with his retaliation claims.

In a separate order the court will direct service upon Todd Kramer and Evelyn Stevenson. The order will direct Kramer and Stevenson to identify for the plaintiff the Doe members of the MDT and the Doe members of the IBCC, as soon as possible after the complaint is served. When Barnes learns the identity of the Doe defendants, he shall immediately move the court for an order directing amendment of the caption and service of the complaint on them. *See Borges v. Administrator for Strong Mem'l Hosp.*, No. 99-6351FE, 2002 WL 31194558, at *1 n.1 (W.D.N.Y. Sept. 30, 2002). *See also Searcy v. Dallas Police Dep't*, No. 3:01-0687-P, 2001 WL 611169 (N.D. TX May 31, 2001).

### B.    Due Process

Barnes alleges a violation of his right to due process because he was placed in isolation without a hearing. He alleges this deprived him of the right to finish groups, earn good time credits, and move up in classification.

In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, states may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484 (internal citations omitted). First to be determined is whether the sanction constitutes an "atypical and significant hardship." *Chapman v. Dudlek*, No. 95-73-SLR, 1997 WL 309442, at *3 (D. Del. April 18, 1997). If the sanction rises to that level, the court must then review the relevant procedure to determine its sufficiency under the Due Process Clause." *Id.*

In this case, Barnes alleges that his placement in isolation without a hearing violated his due process rights. Yet, neither Delaware law nor DCC regulations create a liberty interest in a prisoner's classification within an institution. *See* Del. Code Ann. 11, § 6529(e). Indeed, "'[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). It has thus been determined that the transfer of a prisoner from one classification is unprotected by "'the Due Process Clause in and of itself,'" even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Moody v. Daggett,* 429 U.S. 78 (1976); *see also Lott v. Arroyo*, 785 F.Supp. 508, 509 (E.D. Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham,* 730 F.Supp. 612 (D.Del.1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). Accordingly, the decision to place Barnes in isolation cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative

of the Constitution." Similarly, his transfer to SHU is not violative of the Constitution. Other than his complaints of lost opportunities, Barnes makes no allegations that his placement in isolation imposed an "atypical or significant hardship on [him] in relation to the ordinary incidents of prison life" so as to impinge upon his protected liberty interests.

Moreover, neither Delaware law nor any other authority creates a liberty interest in the right to participate in a work or education program. *See James v. Quinlan,* 866 F.2d 627, 629-30 (3d Cir. 1989). Likewise, the Due Process Clause does not guarantee the right to earn good-time credits. *Abdul-Akbar v. Department of Corr.,* 910 F.Supp. 986, 1003 (D. Del. 1995). Therefore, as to these allegations Barnes cannot state a claim a claim for violation of a liberty interest created by the Due Process Clause or State law.

Based upon the foregoing, the due process claims have no arguable basis in law or in fact and are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

C. **Privacy Act**

Barnes attempts to raise a cause of action pursuant to 5 U.S.C. § 522a(g)(I)(c). The private right of action created by 5 U.S.C. § 552a(g) of the Privacy Act is limited to actions against agencies of the federal government; it does not apply to state agencies or individuals. *See Carr v. Johnson,* No. 0220580, 51 Fed. Appx. 928 (5th Dist. Oct. 9, 2002); *Dittmann v. California,* 191 F.3d 1020, 1026 (9th Cir. 1999). Accordingly, as to the Privacy Act claim, the complaint fails to state a claim upon which relief may be granted, and the court will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## IV. CONCLUSION

For the above stated reasons, the court will dismiss the due process claim and the Privacy Act claim. Barnes is allowed to proceed with his retaliation claim. An appropriate order will be entered.

UNITED STATES DISTRICT JUDGE

December 5, 2006
Wilmington, Delaware



FILED
DEC - 7 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORTNEY L. BARNES, | ) |
|     Plaintiff, | ) ) ) |
|         v. | ) Civ. No. 06-309-GMS ) |
| WARDEN THOMAS CARROLL, CAPTAIN JOSEPH BALLINGER, COUNSELOR TODD KRAMER, JOHN/ JANE DOE (Member of MDT Board), JOHN/JANE DOE, (Member of MDT Board), CHAIRPERSON OF IBCC EVELYN STEVENSON, JOHN/JANE DOE, (Member of IBCC), and JOHN/ JANE DOE (Member of IBCC), | ) ) ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) |

## ORDER

At Wilmington this 5th day of December, 2006, for the reasons set forth in the Memorandum issued this date,

1. The due process and Privacy Act claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2. The court has identified cognizable retaliation claims against the defendants. Barnes may proceed with the claims.

3. Todd Kramer and Evelyn Stevenson shall identify the Jane/John Doe members of the Multi-Disciplinary Team and the Jane/John Doe members of the Institutional Base Classification Committee, as soon as possible after the complaint is served.

  4. Barnes shall immediately move the court for an order directing amendment of the caption and service of the complaint upon learning the identification of the Jane/John Doe defendants.

  IT IS FURTHER ORDERED that:

  1. The clerk of the court shall cause a copy of this order to be mailed to the plaintiff.

  2. Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), the plaintiff shall complete and return to the Clerk of the Court an **original** "U.S. Marshal-285" form for **the defendants** as well as for the Attorney General of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(C). **Additionally, the plaintiff shall provided the court with one copy of the complaint (D.I. 1) for service upon the defendants. The plaintiff is notified that the United States Marshal will not serve the complaint until all "U.S. Marshal 285" forms have been received by the clerk of the court. Failure to provide the "U.S. Marshal 285" forms for the defendant(s) and the attorney general within 120 days from the date of this order may result in the complaint being dismissed or defendant(s) being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

  3. Upon receipt of the form(s) required by paragraph 2 above, the United States Marshal shall forthwith serve a copy of the complaint this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon the defendant(s) identified in the 285 forms.

  4. Within **thirty (30) days** from the date that the "Notice of Lawsuit" and "Return of Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has not been

received from a defendant, the United States Marshal shall personally serve said defendant(s) pursuant to Fed. R. Civ. P. 4(c)(2) and said defendant(s) shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

5. Pursuant to Fed. R. Civ. P. 4(d)(3), a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** *** When an amended complaint is filed prior to service, the court will **VACATE** all previous service orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). ***

8. **NOTE:** *** Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. ***

_____
UNITED STATES DISTRICT JUDGE

3

