IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORTNEY BARNES,                                    )
         Plaintiff,                              )
                            )    C.A. No.  06-00309-GMS
         v.                                    )
                            )
TODD KRAMER, EVELYN STEVENSON,       )
DAVID PIERCE, JAYME JACKSON, AND CASSIE   )
ARNOLD,                                            )
         Defendants.                             )

**STATE DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**

**A.**      **STATEMENT OF FACTS**

1.     Cortney Barnes, Plaintiff, is an inmate in the custody of the Delaware Department of Correction. He is currently housed in the Delaware Correctional Center, Smyrna, Delaware.

2.     Defendant Todd Kramer is a Correction Counselor and member of the Multi-Disciplinary Team (MTD) at the Delaware Correctional Center.

3.     Defendant Evelyn Stevenson was not a member of the initial classification team that classified plaintiff to the security housing unit (SHU).

4.     Defendant Jayme Jackson is the chairperson of the Institutional Based Classification Committee (IBCC) of the Delaware Correctional Center.

5.     Defendant Cassie Arnold[1] was a Correction Counselor and member of the Multi-Disciplinary Team (MTD) at the Delaware Correctional Center. Cassie Arnold is

---

[1] On July 12, 2004, Cassie Arnold, formerly a Correctional Counselor for the Delaware Department of Correction, was taken  hostage at the Delaware Correctional Center by an inmate in the MHU and

no longer employed with the Delaware Department of Correction. She left the Delaware Correctional Center in July 2004.

6.      Defendant David Pierce is currently the Deputy Warden at the Delaware Correctional Center.

7.      On or about Monday, May 31, 2004, Cortney Barnes and several inmates gathered around inmate Quattlebaum getting physical with Correction Officer Adams. The inmates became increasingly unruly, therefore Officer Adams called for back-up security officers to secure inmate Quattlebaum and quell the disturbance. See Incident Report attached as Exhibit A.

8.      Officers Hamrick and Wood responded and witnessed inmate Quattlebaum refusing direct orders, first to lock in his cell, then to turn around to be handcuffed. See Incident Report attached as Exhibit B. Inmate Quattlebaum struggled with Officer Hamrick who attempted to apply the handcuffs. Id. Other officers assisted to subdue and handcuff inmate Quattlebaum. Id.

9.      At this same time, Barnes, along with several other inmates, gathered around the officers cursing and shouting such things as "we ain't going to take this we are going to f—k (expletive) you up." Id. Subsequently, the officers regained control of the inmates and escorted them to the chow hall without further incident. Id.

10.     As a result of the disturbance, correction officers identified the inmate/actors and prepared incident reports.  After Officer Adams identified Barnes as one of the disorderly and threatening inmates, the Shift Commander ordered him to be

---

terrorized for several hours. Ultimately DCC security staff fatally wounded the inmate and rescued Arnold. She left the property and never returned.

        Notwithstanding, the Federal Civil Procedure Rule 4(m), Arnold has never been served with a copy of this complaint, and greater than 120 days have elapsed since the filing of this complaint.

administratively transferred to a higher security setting pending review. <u>See</u> <u>Administrative Transfer Report</u> attached as Exhibit C.

11.     On June 1, 2004, Lieutenant Pierce and Counselor Arnold, members of the Multi Disciplinary Team (MTD) who make recommendations to the classification committee voted to override Barnes' security status from the Medium High Housing Unit (MHU) 23 to the Maximum Security Housing Unit (SHU) "due to the incident on 5/31/04 during which inmates from the MHU 23 locked themselves in the gate between MHU 23 and 24 and surrounded the officers." <u>See Inmate Classification Report</u> attached as Exhibit D. The MTD members recommended an override to maximum security based on plaintiff's risk assessment score (RAS), and the serious nature of the incident. At the time of that classification, Barnes' risk assessment score (RAS) was 12. <u>See Inmate</u> <u>Classification Report</u> attached as Exhibit E.

12.     Counselor Kramer presented inmate Barnes with a treatment plan for his transfer to SHU after the Quality of Life Level Review Committee (QOL) reviewed Barnes' status following the May 31, 2004 incident. <u>See QOL Report</u> attached as Exhibit F. Barnes read and signed his treatment plan. <u>Id.</u>

13.     On or about June 22, 2004, Jayme Jackson Institutional Based Classification Committee Chairperson (IBCC) approved the recommended transfer to Max/SHU pending disciplinary action. <u>See Delaware Correctional Center Memorandum</u> <u>Re: Classification Results</u> attached as Exhibit G. Typically, a risk assessment, without the consideration of other relevant and compelling factors, justifies a medium security housing placement. However, considering the severity of Barnes' behavior on May 31, 2004, the IBCC approved the override to maximum security placement. <u>See Jackson</u>

<u>Affidavit</u> attached as Exhibit H. Barnes' next classification review was set for August 2004. Upon that review, due to Barnes RAS override, pending institutional reports for disorderly and threatening behavior under investigation, and a pattern of negative behavior, the recommended security level remained at maximum security. <u>See Inmate Classification Report</u> attached as Exhibit I.

14.     On or about October 1, 2004, Counselor McFadden reviewed Barnes' quality of life (QOL) status with him and provided an updated treatment plan. <u>See Quality of Life Level Review</u> attached as Exhibit J.

15.     Barnes appeared for his review of classification on December 7, 2004, and the MTD recommended that he continue in maximum security based on a pattern of negative behavior and that he continue in his SHU programs. <u>See Inmate Classification Report</u> attached as Exhibit K.

16.     Even after Barnes is routinely reviewed with a recommendation for medium/high security, rescinding maximum security to flow down to a less restrictive security housing environment, his counselors note that he has continually received write-ups. <u>See Inmate Classification Report</u> attached as Exhibit L.  Nonetheless, Barnes continues to process through the classification system as appropriate within the guidelines and decision-making process for the placement to the least restrictive levels of security and custody needed to ensure the safety of the public, staff, and other inmates.

17.     In January 2006, shortly before filing this lawsuit, Barnes requested that he be transferred to another prison facility near Texas so that his family contact would be easier. <u>See Inmate Classification Report</u> attached as Exhibit M.  The MDT recommended he be transferred through the interstate compact to be closer to his family for support and

transitioning prior to release in less than five years. <u>See Interstate Compact Transfer Request Form</u> attached as Exhibit M. The IBCC chairperson did not recommend such a transfer because Barnes needed to complete court-ordered programming prior to consideration. <u>Id.</u> Moreover, the Institutional Release Classification Board (IRCB) did not find a compelling reason to approve Barnes' request for transfer out of state. <u>See IRCB decision</u> attached as Exhibit N. Thereafter, Barnes filed this lawsuit on May 9, 2006[2]. (D.I. 1).

**B.     STANDARD OF REVIEW**

18.     A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

19.     The initial burden of proof is on the moving party to demonstrate the absence of material issues of fact and inferences drawn from the facts that would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 at 248. A fact is material if it might affect the outcome of the suit. *Id.* at 247- 48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The facts must be viewed in the light most favorable to the nonmoving party. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir.1999).

---

[2] This District Court dismissed nearly identical claims raised by inmate Jamah K. Grosvenor, in *Grosvenor v. Carroll, s*lip copy, 2008 WL 399658, D.Del. February 14, 2008.

20.    Where the moving party produces an affidavit or other adequate evidence of facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial and the burden shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

21.    The nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. at 322. Without a sufficient showing on an essential element of its case for which that party has the burden of proof, the moving party is entitled to judgment as a matter of law. *Id.* at 322.

**C.    FIRST AMENDMENT RETALIATION**

22.    Barnes alleges that he was taken to SHU in retaliation for speaking out against C/O Adams' failure to follow DCC rules, regulations, and proper procedures. (D.I. 1). He alleges that DCC housing rules for Buildings 22 and 23 at the Delaware Correctional Center emphasize that "inmates may express their views in a non-disruptive manner." Id.  Additionally, plaintiff states "under the First Amendment…citizens have the right to practice 'freedom of speech'." Thus Barnes tries to find good reason for his troublemaking behavior by declaring free speech. (D.I. 1). In order to state a claim that state actors retaliated against Barnes in violation of his First Amendment right, he must prove: (1) that he engaged in constitutionally protected speech; (2) that there was an adverse action taken by the state actors; and (3) that a causal connection existed between the speech and the adverse action, i.e., the retaliatory motive played a substantial part in

the state action at issue. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001) (quoting *Mt. Healthy City School Dist. Bd. of Ed. V. Doyle*, 429 U.S. 274 (1977).

   **(a.)    CONDUCT NOT CONSTITUTIONALLY PROTECTED**

23.    Barnes claims that his transfer to administrative segregation and continued confinement in the Security Housing Unit (SHU) was done in retaliation for exercising his First Amendment right to "free speech." (D.I.2). He claims that his "speaking out" on May 31, 2004 was constitutionally protected speech. Retaliation for the exercise of constitutionally protected rights is itself a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir.1990). Indeed the First Amendment bars retaliation for protected speech. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. at 287. Barnes, however, fails to show that the conduct which allegedly led to the retaliatory misconduct was constitutionally protected. *See Rauser v. Horn,* 241 F.3d at 333 (relief unavailable where conduct not protected by First Amendment).

24.    Barnes, along with a group of inmates, surrounded and isolated an officer as he attempted to secure a disorderly inmate. The group refused to disburse when ordered to do so. Barnes, with the group, used profanity and shouted such things as "we ain't going to take this we are going to f—k (expletive) you up." A prisoner expressing an opinion in a disruptive and riotous manner is not protected conduct for purposes of a § 1983 retaliation claim. *See Wilson v. Budgeon*, 248 Fed.Appx. 348; 2007 WL 2687314 (3d Cir. (Pa)).

25.    In *Wilson v. Budgeon*, a state prisoner filed a civil rights action under 42 U.S.C. § 1983 against prison officials alleging, *inter alia*, that officer Budgeon fabricated

and pursued a misconduct complaint against him in retaliation for exercising his First Amendment right to argue about what program to watch on the cell block television. *Id.,* 248 Fed.Appx., at 350. The allegedly fabricated misconduct charging Wilson with threatening an employee or his family member with bodily harm resulted in sanctions of 60 days disciplinary confinement. *Id.* Wilson filed his lawsuit alleging retaliation and due process claims. The Middle District of Pennsylvania granted summary judgment to the defendants, and Wilson appealed.

26.     The Court of Appeals for the Third Circuit concluded that the retaliation claim plainly lacked merit. The Third Circuit Court stated "expressing an opinion about which television channel to select is not protected speech" for purposes of a § 1983 retaliation claim. *Id.* Applying the pronouncements of *Rauser* to dismiss the *Wilson* case, the Court held, "Wilson, however, failed to show that the conduct which allegedly led to the retaliatory misconduct was constitutionally protected." *Id.*

27.     Similarly, Barnes claims a right to argue about the procedures a correctional officer ought to use to discipline an inmate. Plainly, he fails to show how such disruptive conduct is constitutionally protected. *See Wilson v. Schillinger*, 761 F.2d 921, 925 (3d Cir.1985) (prisoners' First Amendment rights may be curtailed because of institutional needs). In addition to punishment and rehabilitation of prisoners, prison authorities have a legitimate interest in maintaining safety and security within the prison. *Turner v. Safley,* 482 U.S. 78 (1987). Indeed, Barnes has no constitutionally protected right to disrupt and threaten the safety and security of the prison.

**(b.)     NO ADVERSE ACTION**

28.      It is settled, however, that prison inmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. *Turner v. Safley,* 482 U.S. at 78, (quoting *Pell v. Procunier,* 417 U.S. 817, 822, (1974)).

29.      In *Rauser v. Horn*, supra, the Third Circuit held that a prisoner must prove that the conduct that led to the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of prison officials, and that exercise of the constitutional right was a substantial or motivating factor in the challenged action. *See id.*, at 333-34; *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir.2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights."). As State Defendants have asserted previously, Barnes' disruptive and threatening conduct does not amount to constitutionally protected speech. Under *Allah,* 229 F.3d at 225, a prisoner-plaintiff is required to show that the action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Barnes has not produced any evidence to show that he suffered some "adverse action" at the hands of prison officials.

**(c.)     NO CAUSAL CONNECTION BETWEEN PROTECTED SPEECH AND ADVERSE ACTION**

30.      Assuming, *arguendo*, Barnes' conduct was protected, and that he suffered an adverse action, he must then show that the "protected activity was a substantial motivating factor in the state actor's decision to take adverse action." *See Grosvenor v. Carroll*, 2008 WL 399658 (quoting *Rauser* and *Mt. Healthy Bd. of Educ.*). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by

proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

31.    In the instant case the decision to place Barnes in administrative segregation was based on his involvement in an inmate disturbance in the facility. Barnes with a group of inmates presented an immediate threat to the safety and security of staff and the institution based on their misconduct on May 31, 2004.  Prison officials acted with motives that are reasonably related to a legitimate penological interest. Prison administrators deemed the incident "extremely serious in nature." See Exhibit H. Several incident reports detail violations of assault, demonstrations, disorderly and threatening behavior, inciting to riot, and failing to obey an order. (Ex. H.) Defendants' and other prison officials' decision to continue him in a more restricted housing unit was conducive to a custody level appropriate to effectively monitor and control his behavior.

**D.    STEVENSON HAD NO PERSONAL INVOLVEMENT OR RESPONDEAT SUPERIOR LIABILITY**

32.    Barnes' claim against Evelyn Stevenson does not demonstrate any personal involvement on her behalf. *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974). Cleary it is Barnes' burden to identify how Defendant Stevenson participated in, directed, or acquiesced to the events of the plaintiff complaint. *Gay v. Petscok*, 917 F.2d 768, 771 (3d. Cir. 1990).  In this case, Barnes fails to meet his burden. He has not identified any involvement by Stevenson. He merely makes the general allegation in his statement of claim that "Evelyn Stevenson is the chairperson of the I.B.C.C."

33.    The Third Circuit has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 846 F.2d 1195, 1207 (3d

Cir. 1988); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Personal involvement can be established through allegations of either personal direction or actual knowledge and acquiescence; however, such allegations must be made with particularity. *See Rode*, 845 F.2d at 1207.

34.     Barnes does not allege in his complaint that Evelyn Stevenson had a direct role with his placement in the isolation on pre-hearing detention for a period of 11 days.   Aside from the fact that Evelyn Stevenson has supervisory capacity over counselors, Barnes offers nothing to demonstrate that she participated in or approved of a risk to his health or safety. Indeed, in order to establish supervisory liability, any misconduct of the correction officers must be "affirmatively linked" to the actions or inactions of the Administrative Defendant. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). It is without doubt, Evelyn Stevenson did not participate in the classification decision made relevant to plaintiff's complaint. See <u>Stevenson Affidavit</u> attached as Exhibit O. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir.2003)(quoting *Rode v. Dellarciprete,* 845 F.2d at 1207. The record demonstrates an absence of material fact that Stevenson has had any involvement in the alleged wrongs, and there is insufficient evidence to enable a jury to reasonably find for Barnes on the issue of whether Stevenson had any personal involvement in the alleged constitutional violations.

**E.     STATE ACTORS HAVE QUALIFIED IMMUNITY**

35.     Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). In considering qualified immunity, the court must first determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, demonstrate that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts do not show a constitutional violation, this inquiry ends and the officer is entitled to qualified immunity. *Id.* However, if factual allegations, viewed in favor of the injured party, show that there is a constitutional violation the next inquiry is whether the right was clearly established. *Saucier.* To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Specifically, the Supreme Court instructs, the "inquiry must be undertaken in light of the case's specific context, not as a broad general proposition." *Saucier*, 533 U.S. at 201-202. In this regard, no reasonable classification and/or security officer would have known that placing Barnes in a higher security level due to his disruptive, threatening and dangerous behavior violated Barnes rights.

36.     As previously mentioned, Barnes has not shown any evidence that a violation of his First Amendment right has occurred. Therefore the inquiry ends, and the officers are entitled to qualified immunity.

F.     **CONCLUSION**

37.     Based on the foregoing reasons, Plaintiff Cortney Barnes fails to state a claim upon which relief may be granted. Accordingly, State defendants Kramer, Arnold, Stevenson, Jackson and Pierce respectfully request that this Honorable Court grant judgment in their favor as to the retaliation and personal involvement issues.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

 /s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

Dated:  May 23, 2008

### *CERTIFICATE OF SERVICE*

I hereby certify that on May 23, 2008 I electronically filed *State Defendants'*
*Memorandum of Points and Authorities in Support of their Motion for Summary*
*Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on May 23,
2008, I have mailed by United States Postal Service, the document to the following non-
registered party: Cortney L. Barnes, SBI No. 483609, Delaware Correctional Center,
1181 Paddock Road, Smyrna, DE 19977.

/s/ Ophelia M. Waters
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
ophelia.waters@state.de.us

# EXHIBIT A

## INCIDENT REPORT

| Group#: N/A | Type: Inmate Involved | Incident Date: 05/31/2004 | Time: 10:25 | Confidential: No |
|---|---|---|---|---|

**Facility:** DCC  Delaware Correctional Center                          Followup Required : No

**Associated Disciplinary Report #(s):** 1010074

**Associated Disciplinary Report #(s):** 1010076

**Associated Disciplinary Report #(s):** 1010078

**Associated Disciplinary Report #(s):** 1010079

**Associated Disciplinary Report #(s):** 1010080

**Associated Disciplinary Report #(s):** 1010081

**Incident Location:** Bldg.23 A Tier

**Location Description:** Bldg 23 walkway between bldg 23+24

**Violated Conditions:** 1.02/200.201 Assault
1.05/200.225 Demonstrations (Strike)
1.06/200.203 Disorderly or Threatening Behavior
2.06/200.108 Failing to Obey an Order

**Description of Incident:**

ON MAY 31, 2004 AT APPROXIMATELY 10:25 HOURS A TIER WAS ON THE WAY TO CHOW WHILE INSURING INMATES WERE PROPERLY DRESSED I (C/O ADAMS, CARLTON) SAW THAT I/M QUATTLEBAM, VINCENT          ) WAS INPROPERLY DRESSED I INFORMED HIM THAT HE NEED TO TUCK HIS T-SHIRT IN TO HIS PANTS. AT THAT TIME HE WALKED BY ME THEN HE STOPPED IN THE WALKWAY IN BETWEEN BLDG 23 AND BLDG 24 AND SAID," FUCK YOU I DONT NEED TO TUCK IT IN". THEN I WENT IN FRONT OF HIM AND ORDER HIM TO GO BACK TO HIS CELL TO LOCK IN BECAUSE HE WAS NOT PROPERLY DRESS. THEN HE TRIED TO PUSH THROUGH ME SAYING, "FUCK YOU I AM GOING TO CHOW" THEN I RELIZED THAT SOME OTHER INMATES ON A TIER STARTED TO SURROND ME. THEN I CALLED FOR BACK UP.  AT THIS TIME C/O HAMRICK, DAVID CAME DOWN AS BACK UP.  THEN C/O HAMRICK, DAVID ORDER I/M QUATTLEBAM, VINCENT TO GO BACK TO THE CELL.  I/M QUATTLEBAM, VINCENT THEN SAID, "FUCK THAT I'M NOT LOCKING THE FUCK IN."  C/O HAMRICK, DAVID GAVE I/M QUATTLEBAM, VINCENT ANOTHER DIRECT ORDER TO TURN AROUND TO BE CUFFED HE SAID, "FUCK THAT I'M NOT BEING CUFFED".  C/O HAMRICK TRIED TO APPLY HANDCUFF TO I/M QUATTLEBAM RIGHT WRIST AT THAT TIME I/M QUATTLEBAM JERKED AWAY PUSHING C/O HAMRICK HANDS AWAY. THEN C/O PAYNE, ERIC , C/O HAMRICK, DAVID ,AND C/O WOOD, JAMES GRABBED I/M QUATTLEBAM AND APPLIED HANDCUFFS.  I C/O ADAMS, CARLTON , SGT.ABERNATHY, PAUL, AND C/O PHILLPS, MARVIN ASSITED GETING THE REST OF THE INMATE TO GO TO CHOW. AT THIS TIME (I/M PORTER, RUBEN          ) RAN UP TO BLDG 24 DOOR AND SHUT THE DOOR SAYING,"WE ARE NOT GOING ANY FUCKING WERES." I C/O ADAMS, CARLTON LATER INDENTIFIED 5 INMATES THAT WERE DIRECTLY INVOLVE IN THE SITUATION I/M NAMES ARE AS FOLLOWED (I/M BROCK, MARCUS          ), (GROVENOR, JAMAH          ), (FLOWERS, DAMONE          ), (I/M BARNES, COURNEY          ), AND (PORTER, RUBEN          )  THESE FIVE INMATES WERE VERBERLY CHALLENGING TOWARD OFFICERS IN A DISORDERLY AND THREATENING MANNER BY SAYING, "FUCK YOU GUYS WERE NOT GOING ANYWERES AND YOU NEED TO GET YOUR HANDS OF I/M QUATTLEBAM, VINCENT".

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

**Evidence Type:** N/A                                                Date Collected: N/A

**Discovered By :** N/A                             Secured By: N/A

**Type of Force Used:** [ ]   PHYSICAL   [ ]   CHEMICAL [ ]   STUN [ ]   OTHER  [ ]   CAPSTUN [X]   NONE

**Restraints Used**    : N/A

**Immediate Action Taken:**
REPORTS WRITTEN, I/M'S SECURED

| Individuals Involved | | | |
|---|---|---|---|
| **Person Code** | **Name** | **SBI#** | **Title** |
| Staff | Carlton, Adams | N/A | Correctional Officer |

CONFIDENTIAL
Page 1 of 2

00007

# INCIDENT REPORT

| Group#: N/A | Type: Inmate Involved | | Incident Date: 05/31/2004 | Time: 10:25 | Confidential: No |
|---|---|---|---|---|---|

| Staff | Paul, Abernathy J | N/A | Correctional Officer |
|---|---|---|---|
| Staff | Eric, Payne G | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | David, Hamrick S | N/A | Correctional Officer |
| Staff | Marvin, Phillips | N/A | Correctional Officer |
| Staff | James, Wood C | N/A | Correctional Officer |
| Inmate | Vincent, Quattlebaum R | ▓▓▓▓ | N/A |
| Inmate | Marcus, Brock R | ▓▓▓▓ | N/A |
| Inmate | Jamah, Grosvenor K | ▓▓▓▓ | N/A |
| Inmate | Damone, Flowers E | ▓▓▓▓ | N/A |
| Inmate | Courtney, Barnes L | ▓▓▓▓ | N/A |
| Inmate | Ruben, Porter | ▓▓▓▓ | N/A |

**Reporting Officer:** Adams, Carlton  (Correctional Officer)    **Entered By:** Adams, Carlton  (Correctional Officer)

## Approval Information

[X] Approved  [ ] Disapproved  **Date:** 05/31/2004  **Approved by:** Taylor, Ramon   (Staff Lt./Lt)

**Comments:** N/A


CONFIDENTIAL

00008

# EXHIBIT B

SMYRNA DE, 19977
Phone: 302-653-9261

# INCIDENT REPORT

| Group#: N/A | Type: Inmate Involved | | Incident Date: 05/31/2004 | Time: 10:25 | Confidential: No |
|---|---|---|---|---|---|

**Facility:** DCC  Delaware Correctional Center        **Followup Required :** No

**Incident Location:** Bldg.23 A Tier

**Location Description:** walkway between bldg. 23 and bldg. 24

**Violated Conditions:** 1.02/200.201 Assault

1.05/200.225 Demonstrations (Strike)

1.06/200.203 Disorderly or Threatening Behavior

1.17/200.215 Inciting a Riot

2.06/200.108 Failing to Obey an Order

**Description of Incident:**

On May 31, 2004 at approximately 1025 I C/O Hamrick, David and C/O Wood, James were prepairing to run chow in B chow hall. At that time we heard a back up call over the radio from C/O Adams, Carlton. C/O Hamrick and C/O Wood responded to the walkway between building 23 and building 24. C/O Adams informed us that I/M Quattlebaum, Vincent SBI# ████████was refusing to go back to his cell and lock in. C/O Hamrick gave I/M Quattlebaum a direct order to lock in. I/M Quattlebaum stated "fuck that I am not locking the fuck in" C/O Hamrick gave I/M Quattlebaum a direct order to turn around and be cuffed, I/M Quattlebaum stated "fuck that I'm not being cuffed." C/O Hamrick tried to apply a handcuff to I/M Quattlebaum's right wrist. At that time I/M Quattlebaum jerked away pushing C/O Hamrick's hand/arm away. C/O Hamrick and I/M Quattlebaum started to struggle with each other, with assistance from C/O Wood, C/O Adams and C/O Payne, Eric I/M Quattlebaum was subdued and handcuffs were applyed. At this time six other inmates began to gather around the C/O's cursing and swearing at them and stating "we ain't going to take this we are going to fuck you up". The inmates were indentified as I/M Porter, Ruben SBI# ████████, I/M Nelson, Craig SBI# ████████, I/M Barnes, Courtney SBI# ████████, I/M Grosvenor, Jamah SBI# ████████, I/M Brock, Marcus SBI# ████████ and I/M Flowers, Damon SBI# ████████ C/O Phillips, Marvin and C/O Oney, Rastafari came and tried to get the inmates to go to the chow hall with the help of the other C/O's named above. I/M Porter went to the building 24 door and slamed it shut and saying "no one is going fucking anywhere". The C/O's had the door re-opened and escorted the inmates to the chow hall with no further incident.  DSH

| Injured Persons | | Hospitalized | Nature Of Injuries | | |
|---|---|---|---|---|---|
| N/A | | N/A | N/A | | |

| Evidence Type: N/A | | Date Collected: N/A |
|---|---|---|
| Discovered By : N/A | Secured By: N/A | |

**Type of Force Used:** [X]  PHYSICAL  [ ]  CHEMICAL [ ]  STUN [ ]  OTHER  [ ]  CAPSTUN [ ]  NONE

**Restraints Used**    : handcuffs

**Immediate Action Taken:**

I/M Quattlebaum Handcuffed and notified Lt. Salas and Capt. Belanger of incident

### Individuals Involved

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | David, Hamrick S | N/A | Correctional Officer |
| Staff | James, Wood C | N/A | Correctional Officer |
| Staff | Carlton, Adams | N/A | Correctional Officer |
| Staff | Marvin, Phillips | N/A | Correctional Officer |
| Staff | Eric, Payne G | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Rastafari, Oney N | N/A | Correctional Officer |
| Inmate | Vincent, Quattlebaum R | ████ | N/A |
| Inmate | Ruben, Porter | ████ | N/A |
| Inmate | Craig, Nelson C | ████ | N/A |
| Inmate | Courtney, Barnes L | ████ | N/A |
| Inmate | Jamah, Grosvenor K | ████ | N/A |
| Inmate | Marcus, Brock R | ████ | N/A |



CONFIDENTIAL

M00005

## INCIDENT REPORT

| Group#: N/A | Type: Inmate Involved | Incident Date: 05/31/2004 | Time: 10:25 | Confidential: No |
|---|---|---|---|---|

| Inmate | Damone, Flowers E | ▓▓▓▓▓ | N/A |
|---|---|---|---|

**Reporting Officer:** Hamrick, David S (Correctional Officer)　　**Entered By:** Hamrick, David S (Correctional Officer)

### Approval Information

| X | Approved | ☐ Disapproved | Date: 05/31/2004 | Approved by: Taylor, Ramon   (Staff Lt./Lt) |
|---|---|---|---|---|

**Comments:** N/A

CONFIDENTIAL

M00006

# EXHIBIT C

TO:      Inmate _Barnes, Courtney_          ,SBI# ~~[redacted]~~

FROM:    Shift Commander _Belanger_

DATE:    _5/31/04_

SUBJECT:    Administrative Transfer


The undersigned believes that you warrant confinement to a more restrictive setting based upon information presented.  Consequently, pending review, you are hereby temporarily, administratively transferred to:


☐    Protective Custody

☐    Pre-Hearing Detention _____    _____

                                             Offense No.                      Offense Title

☒    Higher Security    _200:203_        _Disorderly/_
                                            _Threatening_

                    _____
                              Signature of Shift Commander


Attach Supporting Documents/Forms ie: 404, 537, I/M statement, etc.

Copy to:    Security Superintendent (Original)
            Institutional Investigator
            Classification
—           MDT Chairperson
            Transfer Office
            Temporary Housing Counselor
            Classified Housing Counselor  _Cassie_
            File


Form #: 228-B (Rev 11/97)                    W00001

CONFIDENTIAL

ADMINISTRATIVE TRANSFER

## INMATE STATEMENT

IN REGARD TO THE INCIDENT THAT HAS PLACED ME HERE, IT SHOULDN'T HAVE NEVER HAPPENED. NO ONE INVOLVED PROVOKED ANY PHYSICAL OR VERBAL DANGER WHICH WOULD EXCITE AN EXPLOSIVE ENVIRONMENT. THE INMATE OF WHOM WAS THE INITIAL INCIDENT COMPLIED TO THE ORDERS OF THE CORRECTIONS OFFICER BUT WAS STILL PHYSICALLY RESTRAINED. "NO ONE" ELSE PROPOSED A THREAT TO THEMSELF'S THE STAFF OR OTHER INMATES. IN LIGHT OF THE EVENTS AT HAND. THE SITUATION WAS OBVIOUSLY STRAINED OVER THE LAST 1-2 MONTHS. THE TIER THAT ALL THE ALLEGED INMATES WERE HOUSED ON HAS BEEN WITHOUT A UNIT T.V., UNIT HOT POT OR UNIT ICE CHEST. ON BEHALF OF MOST OF THE INMATES INVOLVED THE DISRESPECT TREATMENT OF THE TIER AS A WHOLE IS THE REASON FOR THE SAID MISUNDERSTANDING.

ATTEST

Inmate Signature

5/31/04
Date

Inmate refused to make a statement ☐

_____          _____
Staff Signature          Date

**DO NOT DUPLICATE. FORWARD ORIGINAL TO SECURITY SUPERINTENDENT'S OFFICE ONLY.**

Form# 228-B (Rev 11/97)

CONFIDENTIAL          W00002

# EXHIBIT D

Routh    ssification                                    intenance Review

Name: *Barnes, Courtney*                          SBI#: ▓▓▓▓▓▓    Form # 908

**Risk Assessment Scale:**

| Community/Minimum -2 to 04 | Minimum 05 - 08 | Medium 09 – 16 | Maximum 17 or more |
|---|---|---|---|
| | | *12* | |

Override:  ☑ Yes    ☐ No    If yes, briefly specify reason: *5/31/04 Incident in MHU 24*

Mandatory Policy Override Removal Approved By Warden/Designee _____

| | Present | ICB or MDT Recommendation | IBCC Recommendation/ Decision | CICB Recommendation/ Decision | IRCB Decision |
|---|---|---|---|---|---|
| Security | *MHU 23 MEDHG* | *MAX* | *appd* | | |
| Housing | *23* | *SHU* | | | |
| Job | | | | | |
| Education | . | | | | |
| Therapy | *Stress* | *SHU Programs* | | | |
| Other | | | ↓ | | |
| Other | | | | | |
| Next Review Date | Month *09/04* Year | Month *8* Year *04* | Month Year | | |

| MDT or ICB MEMBERS PRESENT | *Lt. Pierce, C. Arnold* | Vote: **2-0** Abstention: |
|---|---|---|
| MDT or ICB CHAIRPERSON | *S/Lt David Pierce* | Date: *6/1/04* |

MDT or ICB COMMENTS *Recommend override to MAX/SHU due to the incident on 5/31/04 during which inmates from MHU 23 locked themselves in the gate between MHU 23 to 24 and surrounded the officers. Recommend override to MAX/SHU pending outcome of the investigation.*

| IBCC CHAIRPERSON | Date: *6/22/04* | Vote: **3-0** Abstention: |
|---|---|---|
| Override (include justification in comments) | Comments: | |

*Pending investigation of 5/31/04*

| CICB CHAIRPERSON | Date: | Vote: Abstention: |
|---|---|---|
| Override (include justification in comments) | Comments: | |

| IRCB CHAIRPERSON: | Date: | Approved: Disapproved: |
|---|---|---|
| Override (include justification in comments) | Comments: | |

# CONFIDENTIAL

▓00042

# EXHIBIT E

# DELAWARE DEPARTMENT OF CORRECTION
## RECLASSIFICATION FORM (WOMEN AND MEN)

FORM # 955 (3 pt.)

OFFENDER NAME: **Barnes, Courtney**    SBI #: ███    DOB: ███    DATE: 06/01/04
LAST    FIRST    MIDDLE INITIAL

INSTITUTION: **DCC**    Prior Classification Date: 12/04/2003

CURRENT SECURITY: ___ Community/Minimum    ___ Minimum    _X_ Medium    ___ Maximum

SENTENCE LENGTH: 9/X/X  EFF. DATE: 12/6/02  STRD: 01/23/11  PED: _/_/  TIS: ✓  NON-TIS: ___
CO Key

### RISK REASSESSMENT

SEVERITY OF CURRENT OFFENSE FOR WHICH INCARCERATED    Current Offense (include other State, if applicable)  **Robbery 1st**
Low Severity ........................................................................................... 0
Moderate Severity ................................................................................... 0
High Severity ........................................................................................... 2
Highest Severity ....................................................................................... 6    **6**

OTHER OFFENSES/BAIL STATUS    Other Offenses(s)/Bail Amount: **NONE**
None or pending probation violation, outstanding misdemeanors, or bail below $5,000 ..... 0
Active Federal, including Immigration and Naturalization Service and/or State warrant or charge(s) with bail of 5,000 to $49,999 .. 2
Pending charges without bail (not a bailable offense, include Violation of Parole) or bail of $50,000 or more ................... 4    **0**

ESCAPE/FAILURE TO APPEAR (FTA) HISTORY    Escape History: **NONE**
(date and type/class)
None or one or more incidents of FTA (capias issued) or military AWOL ........................................................ 0
Walk-off from work release, furlough, Delaware Psychiatric Center, community and/or outside job assignment, courtrooms,
police (city, state, military, etc.), Recovery Center within the past 3 years .................................................. 2
Attempted escape from a secure correctional institution within the past five years or escape from a secure facility ten + years ago ... 3
Escape from a secure correctional institution within the past ten years ........................................................ 5    **0**

CURRENT AGE    Current Age: **25**
Age 39+ ................................................................................................ 0
Age 23 years or less ................................................................................. 1
Age 28-38 ............................................................................................. 2
Age 24 - 27 ........................................................................................... 3    **3**

SEVERITY OF CRIMINAL HISTORY IN THE LAST 5 YEARS    Most Serious Prior Conviction (include Level I-IV, other States): **NONE**
No prior conviction ................................................................................... 0
Low Severity conviction .............................................................................. 0
Moderate Severity conviction ........................................................................ 0
High Severity conviction ............................................................................. 3
Highest Severity conviction .......................................................................... 4    **0**

NUMBER OF CLASS I/MAJOR DISCIPLINARY FINDINGS OF GUILT (since initial or last regular reclassification)  **NONE**
None .................................................................................................. 0
1 Disciplinary Finding of Guilt ..................................................................... 2
2 - 3 Disciplinary Findings of Guilt ................................................................ 3
4+ Disciplinary Findings of Guilt ................................................................... 5
Actual Number of Class I Disciplinary Findings: **0**    **0**

INSTITUTIONAL MISCONDUCT HISTORY (Consider institutional reports during last 5 years.)
First incarceration or no prior Major/Class I Institutional Reports ............................. 0
Major/Class I - Non Predatory Institutional Misconduct Report > 37months ...................... 1
Major/Class I - Non Predatory Institutional Misconduct Report within last 36 months
or Predatory/Assaultive > 37mths .................................................................. 3
Major/Class I - Predatory/Assaultive Institutional Misconduct Report w/in 13 - 36 months ...... 5
Major/Class I - Predatory/Assaultive Institutional Misconduct Report within past 12 months ..... 7    **3**
Most Serious Institutional Misconduct Report: **Lying, Falsify physical evidence**
Date of Most Serious Misconduct Report: **08/13/03**

**CONFIDENTIAL**    W00044

Completed all recommended program(s) AND is currently working..........................................................................-2
Completed some programs, is working and on waiting list for other recommended programs ..........................................-1
Enrolled in recommended program or no treatment recommended and is working ....................................................0
Medically discharged/excused or successfully completed all recommended programs ...................................................0
On waiting list for recommended program and work, due to lack of availability ...........................................................0
Dropped out or failed to complete or was dismissed from program and/or work prior to completion ...............................2
Unsuccessful (refused work and/or program participation).................................................................................3

RISK REASSESSMENT SCORE: *12*

**RISK ASSESSMENT SCALE:**

| Community/Minimum | Minimum | Medium | Maximum |
|---|---|---|---|
| -02 to 04 | 05 - 08 | 09 - 16 | 17 or more |

**Preliminary Security Level** (Check scored security level)

____ Community/Minimum         ____ Minimum        ✓ Medium         ____ Maximum

**OVERRIDES:**

**Any one of the conditions listed below may serve as basis for an override, resulting in higher or lower security than indicated by the preliminary score. (Check all that apply and comment as deemed appropriate.)**

____ Protective Custody or Need for separation from General Population: _____

____ Documented membership in security threat group _____

____ Pending institutional reports under investigation _____

____ Notorious/high profile case _____

____ Mental Health: _____

____ Physical/Medical limitations that could affect housing placement _____

____ Court Order: _____

____ Time to Serve: _____

____ Other (specify): _____

**Recommended Security Level** (Check recommended security level.)

____ Community/Minimum        ____ Minimum        ✓ Medium        ____ Maximum

*Cajun Arnold*                                                 *6/1/04*
Correctional Worker                                             Date

Comments: *Due to the serious nature of the 5/31/04 incident recommend override to MAX/SHU.*

**Final Security Level** (Check appropriate security level)

____ Community/Minimum        ____ Minimum        ____ Medium        ____ Continue Medium - MPO        ✓ Maximum

Classification Officer/Unit Supervisor (signature required for overrides; optional for other decisions)        Date *6/22/07*

**NOTE: Classification Officer/Unit supervisor may change recommendation of classification worker, but must provide written justification.**

Comments: _____

Housing Assignment: _____    Next Classification Date: _____
                                                                        (month and year)

*Program Assignment(s): _____

*Work Assignment: _____

*Changes: _____

FORM# 957 (3 pt.)

CONFIDENTIAL

M00045

# EXHIBIT F

To: Barnes, Courtney          SBI # ████████

From: Counselor    Kramer        Date: 6/14/04

The Quality of Life Level Review Committee has reviewed your status and has determined you level shall:

_____ remain at level _____

_____ be downgraded to level _____

_____ be upgraded to level _____

OR

You have been given a temporary QOL level __A__ which is subject to be changed if the QOL committee determines to do so:

The decision for your level assignment was based on the following reason(s):

_____ Incident  5/31/04 _____

_____

_____

**Treatment Plan**    (your plan includes all items that are checked)

__X__ Develop and maintain a positive attitude with staff and others
__X__ Comply with all rules of the SHU          __X__ Exhibit positive behavior
__X__ Keep your room clean                      __X__ Maintain personal cleanliness
__X__ Show respect for others                   __X__ Respect all property in the SHU
__X__ Anger Management (1)                       ___ Conflict  Resolution (2)
___ Journaling (1,2)                             ___ Violence Reduction (2)
___ Daily Log (All)                              ___ Substance Abuse (3)
___ Communication Skills (3)                     ___ Values Survey (3)
___ Decision Making and Stress (3)               ___ Individual essay (Any)

Signed: _Courtney S. Barnes_          Date: _6/22/04_

Cc:    Records/ Treatment File
       Deputy Warden's Office
       Counselor/ Inmate
       File

# CONFIDENTIAL

█00041

# EXHIBIT G

Appendix E

## DELAWARE CORRECTIONAL CENTER ---- MEMORANDUM

TO:  Inmate *Courtney Barnes*, SBI# ███████, Housing Unit *23*

VIA:  Counselor *Arnold*

FROM:  I.B.C.C.

DATE:  *6/28/04*

RE:  Classification Results

Your M.D.T. has recommended you for the following: *MAX/SHU* _____

_____

_____

The I.B.C.C.'s decision is to:

✓  Approve _____

_____  Not Approve _____

_____  Defer _____

_____  Recommend _____

_____  Not Recommend _____

**BECAUSE:**

_____  Lack of program participation

✓  Pending disciplinary action

_____  Gradual phasing indicated

_____  Open charges

_____  Prior criminal history

_____  Failure to follow your treatment plan in that you _____

_____  Time remaining on sentence

_____  Prior failure under supervision

_____  Poor institutional adjustment

_____  Serious nature of offense

_____

_____  You present a current and continuous danger to the safety of staff, other inmates, or the good order of the Institution. Explanation: _____

**OTHER:** *Rev 8/04* _____

_____

**ADDITIONAL COMMENTS:**

_____  Develop/continue treatment plan with counselor

You will be expected to address the following: _____

_____

_____

Copy to:  Classification
          Inmate
          Institution File

**CONFIDENTIAL**

Form #456 (3 Part NCR)
Revised 11/97

00043

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORTNEY BARNES,                    )
    Plaintiff,              )
                        )
                        )    C.A. No.  06-00309-GMS
    v.                      )
                        )
TODD KRAMER, EVELYN STEVENSON,     )
DAVID PIERCE, JAYME JACKSON, AND CASSIE  )
ARNOLD,                            )
    Defendants.             )

### AFFIDAVIT OF JAYME JACKSON

I, Jayme Jackson having been duly sworn by law, do hereby depose and state as follows:

1.    I am employed by the State of Delaware Department of Correction ("DOC") at the Delaware Correctional Center ("DCC") Smyrna, Delaware as Chairperson of the Institutional Based Classification Committee. ("IBCC"). I have been employed by the DOC since May 1, 1990 and have held my present position since December, 2002.

2.    I have read the plaintiff's complaint and dispute the allegations therein.

3.    When an inmate receives a Level V sentence, an initial classification is completed to determine the inmate's security housing, treatment and programming placement. The Level V inmate's next review date is based on the length of his sentence.

4.    A Level IV sentenced inmate is also reviewed for appropriate security housing although he is not classified.

5.    Lieutenant Ricky Porter and I perform the initial classifications at the DCC. The Multi-Disciplinary Team ("MDT") is composed of the counselor assigned to

the building, an inmate, and depending on the inmate's housing unit either Lieutenant Thomas Seacord or Lieutenant Porter.

6. On May 31, 2004, inmate Cortney Barnes SBI# 483609 received write-ups charging him with institutional violations for assault, disorderly and threatening behavior, inciting a riot, demonstration (strike) and failure to obey an order stemming from an incident involving an inmate disturbance between buildings 23 and 24. The incident reports indicate that the confrontation was extremely serious in nature. Specifically, the reports describe how Cortney Barnes, along with several other inmates, interfered while correctional officer Adams disciplined another inmate. Barnes and several other inmates surrounded the correctional officer, blocked all exits, and obstructed visual contact with staff while yelling, "f_ _ k (expletive) you guys, we are not going anywhere."

7. Institutional security quelled the disturbance and restored control over Barnes and the other inmates involved. All inmates were permitted to continue to the chow hall for mealtime. The security staff identified several of the inmates, including Barnes in their written incident reports as the troublemakers. The identified inmates were administratively transferred to a more restrictive setting pending further review.

8. Right away the MDT completed an interview/classification with inmate Barnes following his transfer to Maximum/Security Housing Unit (Max/SHU) a more restrictive setting. On June 1, 2004 they recommended an override to Maximum Security citing the seriousness of the incident and the pending investigation. Per Bureau policy a request for an override was necessary since his Risk Assessment Score ("RAS") was 12. A RAS score of 12 dictates medium security housing as noted in the Classification

Policy. The override/classification was approved by the IBCC which also noted the seriousness of the incident. Barnes' next review was set for August, 2004.

9.      In August, Barnes was approved to continue with maximum/SHU, and the override was approved based on the investigation of the May 31, 2004 incident. Noting Barnes' pattern of behavior and the pending disorderly and threatening write-up, Barnes was continued at maximum/SHU. Barnes' next review was set for February, 2005.

10.     On March 15, 2005, Barnes was recommended to continue maximum/SHU however, he was approved for Medium/High Custody (MED HC), Mental Health (MH), Maximum Housing Unit (MHU) programs. Barnes would receive an annual classification review in March 2006.

11.     On January 31, 2006, the MDT recommended Barnes continue in Medium HC. Upon Barnes request, the MDT recommended him for Interstate Compact (IC) Transfer. At that time, Barnes had a RAS of 15 points. The Institutional Release Classification Board (IRCB) did not approve the MDT recommendation for IC since Barnes' did not demonstrate that there was a compelling reason for the transfer.

12.     On April 7, 2006, Barnes' MED HC continued, he was approved for employment as a tier-man, and he was approved for the Relationships Program. Barnes' RAS was 16 points.

13.     On November 26, 2006, Barnes was recommended for MED, Greentree, Alternative to Violence (AVP), Thresholds, Lifeskills, and the Pre-Release Program (PRP). He was approved for MED HC, MH, and MHU Programs. However, in January, 2007, due to a pending investigation concerning an assault, disorderly and threatening, and fighting, his classification to MAX was approved.

05/19/2008 14:11    13026596687         LEGAL SERVICES             PAGE   05/05

14. On January 23, 2008, the MDT recommended MED, MHU Programs, Academics, and the KEY program. The CICB denied the KEY Program noting that Barnes was ineligible to 'flow down' to work release/CREST due to the Robbery 1st degree offense. The Board intends to reconsider at Barnes' next review set for August 2008. At that time of this review, Barnes had a RAS of 16 points. An override was not required at this classification.

15.    The plaintiff has continued to process through the classification procedure. Based on the seriousness of the incident that occurred on May 31, 2004, followed by the appropriate classifications, the plaintiff's classification to Maximum Security was completed within the Policy and Procedure of the Bureau of Prisons.

16.    I have made these statements based upon my personal knowledge, specialized training and experience as an employee of the DOC.

Jayme Jackson

**SWORN AND SUBSCRIBED** before me this ___19___ day of May, 2008.

Notary

# EXHIBIT I

# DELAWARE DEPARTMENT OF CORRECTION
## RECLASSIFICATION FORM (WOMEN AND MEN)

FORM # 955 (3 pt.)

OFFENDER NAME: _Barnes, Courtney_   SBI #: ▓▓▓   DOB: ▓▓▓   DATE: _08 05 04_

              LAST    FIRST   MIDDLE INITIAL

INSTITUTION: _DCC_   Prior Classification Date: _06 22 04_

CURRENT SECURITY: ____ Community/Minimum   ____ Minimum   ____ Medium   _X_ Maximum

SENTENCE LENGTH: _9 - -_   EFF. DATE: _12 06 02_   STRD: _01 23 11_   PED: _- - -_   TIS: _X_   NON-TIS: ____

---

## RISK REASSESSMENT

**SEVERITY OF CURRENT OFFENSE FOR WHICH INCARCERATED**   Current Offense (include other State, if applicable) _Robbery 1st ×3_
- Low Severity ......................................................................................................... 0
- Moderate Severity ............................................................................................... 2
- High Severity ....................................................................................................... 4
- Highest Severity .................................................................................................. 6    **6**

**OTHER OFFENSES/BAIL STATUS**   Other Offenses(s)/Bail Amount: _None_
- None or pending probation violation, outstanding misdemeanors, or bail below $5,000 .......... 0
- Active Federal, including Immigration and Naturalization Service and/or State warrant or charge(s) with bail of 5,000 to $49,999 ..2
- Pending charges without bail (not a bailable offense, include Violation of Parole) or bail of $50,000 or more ........... 4    **0**

**ESCAPE/FAILURE TO APPEAR (FTA) HISTORY**   Escape History: _None_
                                                 (date and type/class)
- None or one or more incidents of FTA (capias issued) or military AWOL ......................................................... 0
- Walk-off from work release, furlough, Delaware Psychiatric Center, community and/or outside job assignment, courtrooms, police (city, state, military, etc.), Recovery Center within the past 3 years ........... 2
- Attempted escape from a secure correctional institution within the past five years or escape from a secure facility ten + years ago .... 3
- Escape from a secure correctional institution within the past ten years .......... 5    **0**

**CURRENT AGE**   Current Age: _25_
- Age 39+ ................................................................................................................ 0
- Age 23 years or less ........................................................................................... 1
- Age 28-38 ............................................................................................................ 2
- Age 24 - 27 .......................................................................................................... 3    **3**

**SEVERITY OF CRIMINAL HISTORY IN THE LAST 5 YEARS**   Most Serious Prior Conviction (include Level I-IV, other States): _None_
- No prior conviction ............................................................................................... 0
- Low Severity conviction ....................................................................................... 0
- Moderate Severity conviction ............................................................................. 2
- High Severity conviction ...................................................................................... 3
- Highest Severity conviction ................................................................................. 4    **0**

**NUMBER OF CLASS I/MAJOR DISCIPLINARY FINDINGS OF GUILT** (since initial or last regular reclassification) _None_
- None ..................................................................................................................... 0    _Pending 05-31-04  OTB (Staff)_
- 1 Disciplinary Finding of Guilt ............................................................................. 2
- 2 - 3 Disciplinary Findings of Guilt .................................................................... 3
- 4+ Disciplinary Findings of Guilt ........................................................................ 5    **0**
- Actual Number of Class I Disciplinary Findings: _____

**INSTITUTIONAL MISCONDUCT HISTORY** (Consider institutional reports during last 5 years.)
- First incarceration or no prior Major/Class I Institutional Reports .......................................................................... 0
- Major/Class I - Non Predatory Institutional Misconduct Report ≥ 37months .......................................................... 1
- Major/Class I - Non Predatory Institutional Misconduct Report within last 36 months
  or Predatory/Assaultive ≥ 37mths............................................................................................................................. 3
- Major/Class I - Predatory/Assaultive Institutional Misconduct Report w/in 13 - 36 months .................................. 5
- Major/Class I - Predatory/Assaultive Institutional Misconduct Report within past 12 months ............................... 7    **3**
- Most Serious Institutional Misconduct Report: _Falsify evidence, Lying_
- Date of Most Serious Misconduct Report: _08 11 03_



CONFIDENTIAL      ▓00038

**PERFORMANCE IN TREATMENT      AMS/WORK ASSIGNMENTS**          Status: _MHC programs_

Completed all recommended program(s) AND is currently working ................................................................-2
Completed some programs, is working and on waiting list for other recommended programs ....................................-1
Enrolled in recommended program or no treatment recommended and is working ..................................................0
Medically discharged/excused or successfully completed all recommended programs ..............................................0
On waiting list for recommended program and work, due to lack of availability ..................................................0
Dropped out or failed to complete or was dismissed from program and/or work prior to completion ...........................2
Unsuccessful (refused work and/or program participation)....................................................................3

**RISK REASSESSMENT SCORE:** _12_

**RISK ASSESSMENT SCALE:** | Community/Minimum | Minimum | Medium | Maximum |
|---|---|---|---|
| -02 to 04 | 05 - 08 | 09 - 16 | 17 or more |

**Preliminary Security Level** (Check scored security level)

____ Community/Minimum          ____ Minimum          _X_ Medium          ____ Maximum

**OVERRIDES:**

Any one of the conditions listed below may serve as basis for an override, resulting in higher or lower security than indicated by the preliminary score.  (Check all that apply and comment as deemed appropriate.)

____ Protective Custody or Need for separation from General Population: _____

____ Documented membership in security threat group _____

_X_ Pending institutional reports under investigation _05/31/04 DTB_____

____ Notorious/high profile case _____

____ Mental Health: _____

____ Physical/Medical limitations that could affect housing placement _____

____ Court Order: _____

____ Time to Serve: _____

_X_ Other (specify): _Pattern of negative behavior_____

**Recommended Security Level** (Check recommended security level.)

____ Community/Minimum          ____ Minimum          ____ Medium          _X_ Maximum

_Thomas Banda_                                         _08/05/04_
Correctional Worker                                         Date

Comments: _Recommend continue maximum security_____

_____

**Final Security Level** (Check appropriate security level.)

____ Community/Minimum     ____ Minimum     ____ Medium     ____ Continue Medium - MPO     ____ Maximum

_____          _____
Classification Officer/Unit Supervisor (signature required for overrides; optional for other decisions)     Date

**NOTE: Classification Officer/Unit supervisor may change recommendation of classification worker, but must provide written justification.**
Comments: _____

Housing Assignment: _____     Next Classification Date: _____
                                                                          (month and year)

*Program Assignment(s): _____

*Work Assignment: _____

*Changes: _____

FORM# 957 (3 pt.)                    **CONFIDENTIAL**          W00039

# EXHIBIT J

To: _Baines, Courtney_    SBI # ▓▓▓▓▓▓▓

From: _Counselor McFadden_    Date: _____

The Quality of Life Level Review Committee has reviewed your status and has determined you level shall:

_____ remain at level _____

_____ be downgraded to level _____

_____ be upgraded to level _____

**OR**

You have been given a temporary QOL level _2_ which is subject to be changed if the QOL committee determines to do so.

The decision for your level assignment was based on the following reason(s):

_Transfer from MVCC to SHU_

**Treatment Plan**    (your plan includes all items that are checked)

_X_ Develop and maintain a positive attitude with staff and others
_X_ Comply with all rules of the SHU                _X_ Exhibit positive behavior
_X_ Keep your room clean                            _X_ Maintain personal cleanliness
_X_ Show respect for others                         _X_ Respect all property in the SHU
___ Anger Management (1)                            _X_ Conflict Resolution (2)
_X_ Journaling (1,2)                                _X_ Violence Reduction (2)
_X_ Daily Log (All)                                 ___ Substance Abuse (3)
___ Communication Skills (3)                        ___ Values Survey (3)
___ Decision Making and Stress (3)                  ___ Individual essay (Any)
_X_ Self-Discovery – 1 & 2 (2,3)

                                                    _____
                                                    _____
                                                    _____

Signed: _____    Date: _10/1/04_

Cc:    Records/ Treatment File
       Deputy Warden's Office
       Counselor/ Inmate
       File

**CONFIDENTIAL**                                    00040

# EXHIBIT K

Appendix E

## DELAWARE CORRECTIONAL CENTER ---- MEMORANDUM

TO: Inmate _Barnes, Courtney_, SBI# ▓▓▓▓, Housing Unit _SHU_
VIA: Counselor _Mc Fadden_
FROM: I.B.C.C.
DATE: _12/06/04_
RE: Classification Results

Your M.D.T. has recommended you for the following: _____

_Continue Max,_
_SHU Programs_

The I.B.C.C.'s decision is to:

__✓__ Approve _____

_____ Not Approve _____

_____ Defer _____

_____ Recommend _____

_____ Not Recommend _____

**BECAUSE:**

____ Lack of program participation
____ Pending disciplinary action
____ Gradual phasing indicated
____ Open charges
____ Prior criminal history
____ Failure to follow your treatment plan in that you _____

____ Time remaining on sentence
____ Prior failure under supervision
____ Poor institutional adjustment
____ Serious nature of offense

____ You present a current and continuous danger to the safety of staff, other inmates, or the good order of the Institution. Explanation: _____

**OTHER:** _Rev : 02/05_ _____

**ADDITIONAL COMMENTS:**

____ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

_____

_____

Copy to: Classification
Inmate
Institution File



Form #456 (3 Part NCR)
Revised 11/97

B00036

Routi Classification                                    Maintenance Review

Form # 908

Name: Barnes, Courtney                        SBI#: ▓▓▓▓▓▓

Risk Assessment Scale:

| Community/Minimum -2 to 04 | Minimum 05 - 08 | Medium 09 – 16 | Maximum 17 or more |
|---|---|---|---|
| | | 12 | |

Override: ☒ Yes    ☐ No    If yes, briefly specify reason: Pending WAB, pattern of negative behavior

Mandatory Policy Override Removal Approved By Warden/Designee _____

| | Present | ICB or MDT Recommendation | IBCC Recommendation/ Decision | CICB Recommendation/ Decision | IRCB Decision |
|---|---|---|---|---|---|
| Security | Max | Cont. Max | Approved | | |
| Housing | SHU | Cont. SHU | | | |
| Job | | | | | |
| Education | | | | | |
| Therapy | SHU programs | Cont. SHU programs | | | |
| Other | | | | | |
| Other | | | | | |
| Next Review Date | | Month 02 Year 05 | Month 02 Year 05 | Month / Year | |

| MDT or ICB MEMBERS PRESENT | Lt. Seacord Cnsl. McFadden | | Vote: Abstention: 0 |
|---|---|---|---|
| MDT or ICB CHAIRPERSON | Richard J. Seacord | | Date: 11/16/04 |

MDT or ICB COMMENTS: I/M Barnes was transferred after he & 5 other inmates attempted to isolate and intimidate 2 C/o's in a walkway in between 24 & another MHU Bldg. I have followed up to ensure the hearing will take place as it is still pending.

| IBCC CHAIRPERSON | Cindy A. Atallian | Date: 12/07/04 | Vote: Abstention: 3–0 |
|---|---|---|---|

Override (include justification in comments) _____   Comments:

Pending Disorderly or Threatening write-up from 05/04.

| CICB CHAIRPERSON | | Date: | Vote: Abstention: |
|---|---|---|---|

Override (include justification in comments) _____   Comments:

| IRCB CHAIRPERSON: | | Date: | Approved: Disapproved: |
|---|---|---|---|

Override (include justification in comments) _____   Comments:

CONFIDENTIAL   W00037

# EXHIBIT L

DL2

Routine Classification                          Maintenance Review

Form # 908

Name: _Barnes, Cortney_                    SBI#: ▆▆▆▆▆

| Risk Assessment Scale: | Community/Minimum ✓ -2 to 04 | Minimum 05 - 08 | Medium 09 - 16 | Maximum 17 or more |

16

Override: ☐ Yes   ☒ No   If yes, briefly specify reason: _____

Mandatory Policy Override Removal Approved By Warden/Designee _____

| | Present | ICB or MDT Recommendation | IBCC Recommendation/ Decision | CICB Recommendation/ Decision | IRCB Decision |
|---|---|---|---|---|---|
| Security | Med/High 22 | Cont. | Approved | | |
| Housing | | | | | |
| Job | | Treinan | | | |
| Education | | | | | |
| Therapy | | Relationships | | | |
| Other | | | | | |
| Other | | | | | |
| Next Review Date | | Month 01 Year 07 | Month 01 Year 07 | Month / Year | |

MDT or ICB MEMBERS PRESENT _Seccord & counselor Stallion_   Vote: 2—0  Abstention:

MDT or ICB CHAIRPERSON _Seccord_   Date: 7/14/00

MDT or ICB COMMENTS _Based on write-ups, continuation at medium high is recommended._

IBCC CHAIRPERSON _Thomas Zonda_   Date: 07/18/06   Vote: 4—0  Abstention:
Override (include justification in comments) ___   Comments:

CICB CHAIRPERSON   Date:   Vote:  Abstention:
Override (include justification in comments) ___   Comments:

IRCB CHAIRPERSON:   Date:   Approved:  Disapproved:
Override (include justification in comments) ___   Comments:

CONFIDENTIAL

W00023

# EXHIBIT M

INTERSTATE CORRECTION COMPACT TRANSFER REQUEST FORM

A.    Name: CORTNEY L. BARNES        SBI#: ████████    DOB: ████
      Charge(s): (3) ROBBERY 1 , (1) PDWCF

Sentence: 8 yrs.  Effective Date: 12/06/02 STRD: 3/01/2010 PE: —
Reason for Request: MY REASONS FOR REQUEST ARE THAT MY
NEAREST RELATIVE IS IN BURKBURNETT, TX. THIS
MAKES VISITS AND EMOTIONALL SUPPORT PRACTICALLY
IMPOSSIBLE. I WOULD LIKED TO BE MOVED TO A
STATE CLOSER TO TEXAS SO THAT FAMILY CONTACT
WOULD BE A BIT EASIER.

B.    Review and Recommendation (Note: MDT/IBCC for offender initiated requests only)

MDT:        Recommend [X]    Not Recommend [ ]
Comments:
The transfer would allow more family support for
eventual transition to the community.

Signature: _____    Date: _____

IBCC:       Recommend [ ]    Not Recommend [X]
Comments:
Court ordered Programming Key, PRP, Lifeskills
prior to consideration

Signature: _____    Date: 2/14/06

Warden:     Recommend [ ]    Not Recommend [X]
Comments:
_____

Signature: Thomas L. Carrol    Date: 2/20/06

IRCB:       Recommend [ ]    Not Recommend [X]
Comments: No compelling reason for transfer

Signature: Rick Kearny    Date: 2/28/06

Bureau Chief:    Approved [ ]    / Disapproved [ ]
Comments:
_____

Signature: _____    Date: _____

Form#: ICC-1

**CONFIDENTIAL**    ▓00028

# EXHIBIT N



**STATE OF DELAWARE
DEPARTMENT OF CORRECTION
BUREAU OF PRISONS**
245 McKEE ROAD
DOVER, DELAWARE 19904
TELEPHONE: (302) 739-5601

Institutional Release Classification Board

| | |
|---|---|
| **Name** | BARNES          CORTNEY |
| **Hearing Date** | 2/28/06 |
| **SBI Number** | ▆▆▆▆ |
| **Institution** | DCC |
| **Request** | Interstate Compact Transfer |

| | |
|---|---|
| **Decision** | Not Rec |
| **Vote** | 00-06 |
| **Remarks** | *No compelling reason* |

✗ CONCUR                    — VETO

_For the IRCB_                    Chief, Bureau of Prisons

cc: Records-white
    Classfication-pink
    Inmate-yellow

Tuesday, February 28, 2006

**CONFIDENTIAL**

00027

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COURTNEY BARNES,                          )
                                          )
            Plaintiff,                    )
                                          )     C.A. No.  06-00309-GMS
      v.                                  )
                                          )
TODD KRAMER, EVELYN STEVENSON,            )
DAVID PIERCE, JAYME JACKSON, and          )
CASSIE ARNOLD,                            )
                                          )
            Defendants.                   )

**AFFIDAVIT OF EVELYN J. STEVENSON**

      I, Evelyn J. Stevenson, having been duly sworn by law, do hereby depose and state as

follows:

      1.      I am currently employed by the State of Delaware Department of Corrections as

an Inmate Classification Officer II. My responsibilities include the examination and evaluation

of individual inmate cases, determining eligibility for certain programs and housing assignments,

reviewing institutional behavior, reviewing program participation and chairing the Institutional

Based Classification Committee. ("IBCC"). I have been employed by the DOC for 23 years.

      2.      I have been the Classification Officer and Counselor Supervisor for the Medium

and Minimum compound since 2002. The Classification Officer for the Maximum Housing

Security Unit ("MHU") where inmate Courtney Barnes was housed in June of 2004 is Jayme

Jackson. She, and the officers assigned under her are responsible for classifications in the

Maximum area. In Counselor Jackson's absence, Counselor Cindy Atallian has acted as the

Institutional Based Classification Chairperson.  I was not involved in inmate Courtney Barnes's

classification during the time alleged and is the basis of his Complaint.

3.    I have made these statements based upon my personal knowledge, specialized

training and experience as an employee of the DOC.

Evelyn J. Stevenson

**SWORN AND SUBSCRIBED** before me this ___23___ day of May, 2008.

Notary

**TONYA R. SMITH**
Notary Public, State of Delaware
My Commission Expires June 13, 2008