IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORTNEY L. BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 06-309-GMS |
| | ) |
| COUNSELOR TODD KRAMER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

## I. INTRODUCTION

The plaintiff Cortney L. Barnes ("Barnes"), a prisoner incarcerated at the James T.

Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42

U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis*

pursuant to 28 U.S.C. § 1915. (D.I. 9.) Barnes alleges retaliation for exercising his First

Amendment rights. Now before the court is the motion for summary judgment of the defendants

Todd Kramer ("Kramer"), Evelyn Stevenson ("Stevenson"), David Pierce ("Pierce"), Jayme

Jackson ("Jackson"), and Cassie Arnold ("Arnold") (collectively "State defendants") and Barnes'

cross motion for summary judgment. (D.I. 23, 25.) For the reasons that follow, the court will

grant the State defendants' motion for summary judgment and will deny Barnes' motion for

summary judgment.

## II. BACKGROUND

Following screening of the complaint, Barnes was allowed to proceed with a

retaliation/free speech claim. (D.I. 11.) The defendants Warden Thomas Carroll ("Warden

Carroll") and Captain Joseph Belanger ("Belanger") were subsequently dismissed and the Doe

defendants were identified as Pierce, Arnold, and Jackson. (D.I. 12, 20.) Pierce[1] and Arnold were members of the Multi-Disciplinary Team ("MDT"); Kramer was Barnes' counselor and a member of the MDT; and Jackson, who has held her position since December 2002, was the chairperson of the Institutional Base Classification Committee ("IBCC"). (D.I. 24, ex. H.) Stevenson is a classification officer and counselor supervisor and also the chairperson for inmates housed in the medium and minimum compound. (*Id.* at ex. O.) She was not involved in Barnes's classification procedure during the relevant time period. (*Id.*)

On May 31, 2004, Barnes was involved in an incident with several other inmates and was charged with the institutional rule violations of assault, disorderly and threatening behavior, inciting a riot, demonstration (strike), and failure to obey an order. (*Id.* at ex. H.) The incident occurred when Barnes, along with other inmates, was disorderly and gathered around a corrections officer who was attempting to subdue another inmate. (*Id.* at exs. A, B.) One of the inmates slammed the door shut and the inmates were swearing and yelling expletives such as "we are not going f—king going anywhere." (*Id.* at ex. A.) The incident reports explain in detail how the inmates interfered while the corrections officer disciplined another inmate. (*Id.* at ex. H.) The inmates were escorted to the chow hall without further incident. (*Id.* at ex, B.) As a result of his actions, on May 31, 2004, Barnes, along with other inmates involved in the incident, was transferred to the isolation unit pending further disciplinary action. (*Id.* at ex. C, H.) At the time, Barnes had a risk assessment score ("RAS") of 12 which dictates a medium security housing assignment. (*Id.* at exs. E, H.) On June 1, 2004, the MDT members recommended an override to maximum security due to the seriousness of the incident and the pending

---

[1]Pierce is currently the deputy warden at the VCC.

investigation. (*Id.* at exs. D, H.) The override was approved by the IBCC which noted the seriousness of the incident. (*Id.* at exs. D, E, H.)

Barnes' classification was reviewed on several occasions, but he remained in the Maximum/Security Housing Unit ("SHU") with override approval as a result of the May 2004 incident. (*Id.* at ex. H.) It was recommended on March 15, 2005, that Barnes continue in SHU, but he was approved to a Medium High Custody, and Mental Health, Maximum Housing Unit programs. (*Id.*) Barnes sought an Interstate Compact Transfer that was recommended by the MDT on January 31, 2006, but the Institutional Release Classification Board ("IRCB") did not approve the MDT recommendation. (*Id.*) By this time, Barnes had a RAS of 15. (*Id.*)

In April and November 2006, Barnes had a RAS of 16 and was approved for a number of programs and employment. (*Id.*) Because of a pending investigation regarding an assault, disorderly and threatening and fighting, in January 2007, Barnes was reclassified to a maximum housing unit. (*Id.*) As of January 23, 2008, Barnes had a RAS of 16. The MDT recommended a medium housing placement and several programs. (*Id.*) An override was not required for his current classification. (*Id.*) Barnes continues to process through the classification system. (*Id.*)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Retaliation

The State defendants move for summary judgment on the grounds that Barnes' speech was not constitutionally protected, he suffered no adverse action at the hands of prison officials, and, in the alternative, assuming that Barnes' speech was protected and that he suffered an adverse action, he cannot show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. Barnes asks the court to deny the State defendants' motion and set the case for a jury trial. He contends that the State defendants failed to prove his direct involvement in the Mary 31, 2004 incident, failed to explain the four month

period when he was transferred from MHU to SHU but had no disciplinary hearing to prove his guilt or innocent, and contends his constant write-ups and request for an interstate transfer have no bearing on the case. Although Barnes disputes his involvement in the May 2004 incident, his argument that he "merely spoke to the unfairness that [an inmate] was being treated with", belies his position. (D.I. 26.)

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton,* 523 U.S. 574, 592 (1998); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that Barnes demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

Initially the court notes that Barnes' speech does not deserve the protection of the First Amendment. Barnes fails to indicate what he actually said, but acknowledges that he spoke to

the unfairness of the treatment of an inmate. He provided no evidence to support this statement. Conversely, exhibits submitted by the State defendants indicate that the inmates involved in the May 2004 incident, one of whom was Barnes, gathered around a corrections officer in a threatening manner while cursing and swearing at him. Based upon the State defendants' undisputed evidence the court finds that the statements attributed to the inmates, including Barnes, were disruptive to the safety and security of the operation of the institution and, therefore, were not constitutionally protected forms of speech. *See Waters v. Churchill*, 511 U.S. 661, 681 (1994) (the question of whether the potential disruptiveness of speech would render it unprotected is a question of law); *Wilson v. Budgeon*, 248 F. App'x 348 (3d Cir. 2007); *Jefferson v. Wolfe*, Civ. No. 04-44 Erie, 2007 WL 869630 (W.D. Pa. Mar. 16, 2007).

Even if Barnes' speech was protected and he had demonstrated that his speaking out was a substantial motivating factor in the State defendants' decision to place him in isolation and later in SHU, State defendants provided evidence that their actions were based upon a legitimate penological interest. Barnes was involved in an incident that the prison administration considered "extremely serious in nature." (D.I. 24, ex. H.) There were reported violations of assault, demonstrations, disorderly or threatening behavior, inciting a riot, and failing to obey an order. *Id.* at exs. A, B. Barnes was sent to isolation because he was involved in the May 2004 incident; specifically because he interfered while a corrections officer disciplined another inmate. He remained in SHU based upon the seriousness of the incident, but was given periodic classification reviews and ultimately was reclassified to a lower security classification. Given the seriousness of the incident, the court finds that State defendants have proven that Barnes's transfer to isolation and resultant SHU classification reasonably related to a legitimate

-6-

penological interest, namely to effectively monitor and control Barnes's behavior for the security of the institution. Therefore, the court will grant the State defendants' motion for summary judgment and will deny Barnes' motion for summary judgment.

## B. Personal Involvement

The State defendants argue that Barnes' claims against Stevenson do not demonstrate any personal involvement on her behalf. Barnes apparently concedes the issue as he states that he "has no argument at this time". Nothing in the record contravenes Stevenson's affidavit that she was not involved in Barnes' classification procedure during the relevant time period.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). After reviewing the record, the court finds that Stevenson has demonstrated an absence of material fact, and there is insufficient evidence to enable a jury to reasonably find for Barnes on the issue of whether Stevenson had any personal involvement in the alleged constitutional violations. Therefore, the court will grant the State defendants' motion for summary judgment and will deny Barnes' motion for summary judgment.

## V. CONCLUSION

For the above stated reasons the court will grant the State defendants' motion for summary judgment and will deny Barnes' motion for summary judgment.[2] An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

Feb 2 6 , 2009
Wilmington, Delaware

_____

[2]The State defendants also move summary on the basis of qualified immunity. The court will not address the issue inasmuch as it will grant summary judgment on other grounds.

-7-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CORTNEY L. BARNES,                          )
                                            )
    Plaintiff,                              )
                                            )
        v.                              ) Civ. Action No. 06-309-GMS
                                            )
COUNSELOR TODD KRAMER, et al.,              )
                                            )
    Defendants.                             )

**ORDER**

At Wilmington this 26 day of _____Feb._____, 2009, for the reasons set forth in

the Memorandum issued this date;

1. State defendants motion for summary judgment is **granted**. (D. I. 23.)

2. The plaintiff's motion for summary judgment is **denied**. (D.I. 25.)

3. The clerk of the court is directed to **enter judgment** in favor of the defendants Todd

Kramer, Evelyn Stevenson, David Pierce, Jayme Jackson, and Cassie Arnold and against the

plaintiff and to **close** the case.

                                    CHIEF, UNITED STATES DISTRICT JUDGE